STATE OF CONNECTICUT *v.* DANIEL JARRETT
(AC 23506)

Foti, Dranginis and McLachlan, Js.

Argued December 1, 2003—officially released April 20, 2004

*Raymond L. Durelli*, special public defender, for the appellant (defendant).

*Proloy K. Das*, special deputy assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Victor Carlucci, Jr.*, senior assistant state's attorney, for the appellee (state).

*Opinion*

McLACHLAN, J. The defendant, Daniel Jarrett, appeals from the judgment of conviction, rendered after a jury trial, of possession of four ounces or more of a cannabis-type substance in violation of General Statutes § 21a-279 (b), criminal possession of a pistol or revolver in violation of General Statutes § 53a-217c and possession of a sawed-off shotgun in violation of General Statutes § 53a-211. The defendant claims that the trial court improperly (1) instructed the jury on constructive possession, (2) instructed the jury on his presumption of innocence and (3) admitted into evidence items regarding proof of residence. The defendant also claims that prosecutorial misconduct deprived him of his due process right to a fair trial. We affirm the judgment of the trial court.

The relevant facts are as follows. On December 22, 2000, detectives from the Hartford police department executed a search warrant at apartment 202 at 68-70 Morris Street, from which the defendant was allegedly selling drugs. They recovered more than four pounds of marijuana, a .32 caliber pistol and a sawed-off shotgun. They also seized numerous items identifying the defendant. An arrest warrant for the defendant was obtained and successfully executed on February 22, 2001.

The defendant was charged by substitute information with possession of four ounces or more of a cannabis-type substance in violation of § 21a-279 (b), possession with intent to sell one kilogram or more of a cannabis-

type substance in violation of General Statutes § 21a-278 (b), criminal possession of a pistol or revolver in violation of § 53a-217c and possession of a sawed-off shotgun in violation of § 53a-211. After a trial by jury, the defendant was found guilty on all but the possession with intent to sell count. The defendant filed motions for a judgment of acquittal and for a new trial, which were denied. The court sentenced the defendant to a total of ten years incarceration, execution suspended after eight years, with five years probation. This appeal followed.

I

The defendant first claims that the court improperly instructed the jury on constructive possession. The defendant did not file a written request to charge and failed to object to the court's instructions. He now requests review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[1] We review his claim under *Golding* because the record is adequate for review and the claim is of constitutional magnitude. "[A]n improper jury instruction as to an essential element of the crime charged may result in the violation of the defendant's due process right to a fair trial . . . ." (Internal quotation marks omitted.) *State* v. *Smith*, 70 Conn. App. 393, 398, 797 A.2d 1190, cert. denied, 261 Conn. 924, 806 A.2d 1063 (2002).

---

[1] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40. The first two questions relate to whether a defendant's claim is reviewable, and the last two relate to the substance of the actual review. *State* v. *Jordan*, 64 Conn. App. 143, 150, 781 A.2d 310 (2001).

The standard of review for constitutional claims of improper jury instructions is well settled. "In determining whether it was . . . reasonably possible that the jury was misled by the trial court's instructions, the charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied . . . is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Citation omitted; internal quotation marks omitted.) *State* v. *Respass*, 256 Conn. 164, 182, 770 A.2d 471, cert. denied, 534 U.S. 1002, 122 S. Ct. 478, 151 L. Ed. 2d 392 (2001).

The defendant was charged with four possessory offenses. On appeal, he claims that the court's instruction on constructive possession was improper because it did not adequately address intent.[2] We disagree.

---

[2] The court indicated that the instruction on constructive possession provided as to count one applied to the other counts. The instructions as to count one in relevant part were: "Count one, illegal possession of four ounces or more of a cannabis-type substance is defined in General Statutes § 21-279 (b) . . . and insofar as it pertains to this case . . . reads as follows . . . a person who possesses or has under his control four ounces or more of a cannabis-type substance, except as authorized, shall be punished. Cannabis-type substance for the purposes of this case means the dried leaves of the marijuana plant. So, you must first ascertain whether the substance seized from the apartment in question was four ounces or more of a cannabis-type substance. On this subject, you will recall the testimony . . . of the police officers and Laura Grestini, the state toxicology chemist.

"If you find that the substance in question was four ounces or more of a cannabis-type substance, then the question for you to decide is whether the defendant knowingly had it in his possession. Keep in mind that the possession of the substance, and not ownership, is all that is required. Under the statute, the state does not have to prove that the defendant had actual

To prove constructive possession, the state must prove that the defendant exercised dominion and control over the contraband and had knowledge of its presence and character. *State* v. *Hernandez*, 254 Conn. 659, 669, 759 A.2d 79 (2000). In our criminal statutes con-

---

possession of the substance; that is, that the defendant had the substance on his person or in his hands. It is sufficient that the state prove that the defendant had constructive possession. Constructive possession is established when it's shown that the defendant exercised dominion and control over the cannabis-type substance and had actual knowledge of its presence. Remember then, constructive possession requires the showing of two things, control and knowledge. It may be exclusive or shared by others. The latter is known as joint possession. Constructive possession is not such a difficult concept to understand. For example, I have constructive possession of the books and other things in my office, even though they are not in my hands, because I have control over them, and I know what and where they are. I am sure that you can think of many things of which you have constructive possession right now, even though you do not have them with you.

"Control is to be given its ordinary meaning; that is to say that the defendant is in control of the cannabis-type substance when it is shown that he exercises a direct control over it, and coupled with possession in the first element is the requirement of knowledge. The state must prove beyond a reasonable doubt that the defendant knowingly possessed the cannabis-type substance. A person acts knowingly with respect to possessing the substance when he is aware that he is in possession of it. The mere presence of the defendant at the house where the cannabis-type substance is found is not sufficient to support a finding of constructive possession. However, a person's presence is a material and probative factor for the jury to consider along with all the other evidence.

"The state has submitted evidence to show that the defendant had control over the premises where the cannabis-type substance was found. The evidence presented by the state included the testimony of the police, the testimony of the landlord and the various items of personal property seized from the apartment. Control of the premises gives rise to an inference of unlawful possession of the items found in the premises, and the mere access by others is not sufficient to defeat this inference. There is no evidence, and the defendant does not claim that he was authorized to possess four ounces of a cannabis-type substance.

"To summarize, if you find that the state has proved beyond a reasonable doubt, one, that the substance in question consisted of four ounces or more of a cannabis-type substance and, two, that the defendant had constructive possession of it, you must find the defendant guilty in this count of the information. On the other hand, if you find that the state has failed to prove beyond a reasonable doubt either one or both of these elements, you must find the defendant not guilty of this count."

cerning possession, control must be exercised intentionally. *State* v. *Hill*, 201 Conn. 505, 516, 523 A.2d 1252 (1986). Thus, to meet the requirements of control, the defendant must have intended to exercise control over the object. That intent may be proved by circumstantial evidence. *State* v. *Knight*, 56 Conn. App. 845, 851, 747 A.2d 13 (2000).

The court's instructions informed the jury that control "is to be given its ordinary meaning; that is to say that the defendant is in control of the cannabis-type substance when it is shown that he exercises a *direct* control over it . . . ." (Emphasis added.) That description is significant, for it suggests an "[i]mmediate or proximate" control. Ballentine's Law Dictionary (3d Ed. 1969). To "direct" is to guide, regulate or control. Id.

The court's instructions on possession in the present case followed almost verbatim the model jury instructions found in J. Pellegrino, Connecticut Selected Jury Instructions: Criminal (3d Ed. Rev. 2001) § 8.1, p. 383. Neither mention intentional control. A review of constructive possession in Connecticut law indicates that explicit reference to intentional control is the exception, not the norm. Our decisions consistently have held that to prove either actual or constructive possession, the state must prove that the defendant exercised dominion and control over the contraband and had knowledge of its presence and character. See *State* v. *Hernandez*, supra, 254 Conn. 669; *State* v. *Nesmith*, 220 Conn. 628, 634 n.9, 600 A.2d 780 (1991); *State* v. *Reddick*, 207 Conn. 323, 328, 541 A.2d 1209 (1988); *State* v. *Sanchez*, 75 Conn. App. 223, 242, 815 A.2d 242, cert. denied, 263 Conn. 914, 821 A.2d 769 (2003); *State* v. *Thompson*, 46 Conn. App. 791, 797–98, 700 A.2d 1198 (1997). Furthermore, Connecticut appellate courts have rejected challenges to jury instructions due to the lack of an explicit instruction on intentional control. See *State* v. *Respass*, supra, 256 Conn. 181–84; *State* v. *Smith*, 38

Conn. App. 29, 43, 658 A.2d 156 (1995). Accordingly, we hold that a separate instruction on the requirement of intentional control need not be provided in every instance. Because the court instructed the jury that it must find that the defendant exercised direct control over the alleged contraband, we conclude that the jury was instructed properly on intentional control.

The defendant also claims that the court failed to instruct the jury that constructive possession required him to have knowledge of the character of the contraband. That claim merits little discussion. In its instructions, the court stated that the state must "prove beyond a reasonable doubt that the defendant knowingly possessed the cannabis-type substance." In addition, the court provided an illustrative example, explaining that "I have constructive possession of the books and other things in my office, even though they are not in my hands, because I have control over them, and I know what and where they are." We conclude that the court properly instructed the jury that the defendant was required to have knowledge of the character of the contraband.

Reading the court's charge as a whole, we conclude that the jury was instructed properly on constructive possession. Accordingly, the defendant's claim fails to satisfy *Golding*'s third prong.

## II

The defendant claims that the court improperly instructed the jury on his presumption of innocence. The defendant again did not file a written request to charge or object to the court's instructions. Again, he requests review under *State* v. *Golding*, supra, 213 Conn. 239–40.[3]

---

[3] See footnote 1.

The defendant's claim has little merit. Even if we assume that a constitutional violation exists, we would conclude that any instructional error was harmless beyond a reasonable doubt. Jury charges are to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. *State* v. *Respass*, supra, 256 Conn. 182. We have recognized that when a court gives a lengthy jury instruction, a slip of the tongue may occasionally occur. *Opotzner* v. *Bass*, 63 Conn. App. 555, 562, 777 A.2d 718, cert. denied, 257 Conn. 910, 782 A.2d 134 (2001), cert. denied, 259 Conn. 930, 793 A.2d 1086 (2002).

Our review of the record persuades us that the court's inaccurate instruction was a mere slip of the tongue.[4] The court incorrectly instructed the jury that "the presumption of innocence alone isn't sufficient to acquit a defendant unless and until the State presents sufficient evidence during the trial to acquit a defendant—I'm sorry—to satisfy the jury beyond a reasonable doubt of the defendant's guilt." Viewed in isolation, that misstatement potentially is misleading. Viewed in the context of the overall charge, its harmlessness becomes apparent.

The jury was repeatedly instructed on the defendant's presumption of innocence and the state's burden of proof beyond a reasonable doubt. The court explained that "the defendant is presumed to be innocent unless and until he is proven guilty beyond a reasonable doubt." In addition, the jury was provided with written instructions. Those instructions stated that the "presumption of innocence alone is enough to acquit a defendant" and that "the burden is on the prosecution to prove the defendant guilty of the crime or crimes it has charged, and the defendant does not have to prove his innocence."

---

[4] The defendant, himself, concedes that the misstatement was inadvertent.

We do not require technical perfection in jury instructions. *State* v. *Vessichio*, 197 Conn. 644, 650, 500 A.2d 1311 (1985), cert. denied, 475 U.S. 1122, 106 S. Ct. 1642, 90 L. Ed. 2d 187 (1986). Viewing the charge as a whole, the court's misstatement was harmless beyond a reasonable doubt.

### III

The defendant next claims that the court improperly admitted into evidence items regarding proof of residence that were seized during the December 22, 2000 search of his apartment. Before trial, the defendant filed a motion to suppress those items, which was granted in part and denied in part.

"Our standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . ." (Internal quotation marks omitted.) *State* v. *Clark*, 255 Conn. 268, 279, 764 A.2d 1251 (2001).

The warrant in the present case described the items to be seized as "[m]arijuana, green plant like substance, cannabis sativa, measuring devices, records of sale and monies derived from same, proof of residence, packaging materials, fire-arms and ammunition." The defendant argues that the "proof of residence" language fails to comply with the particularity requirement of the fourth amendment to the United States constitution.[5] We disagree.

---

[5] Although the defendant also asserts a violation of our state constitution, he has provided no independent state constitutional analysis. We thus limit our review to the defendant's federal constitutional claim. See *State* v. *Merriam*, 264 Conn. 617, 631 n.17, 835 A.2d 895 (2003).

The fourth amendment requires all warrants to "particularly describ[e] the place to be searched, and the persons or things to be seized." "The particularity requirement reflects two concerns. . . . The first concern is the deterrence of general, exploratory rummaging in a person's belongings. . . . The second concern is that the scope of a lawful search will be limited to the places in which there is probable cause to believe that [the items sought] may be found." (Citations omitted; internal quotation marks omitted.) *State* v. *Buddhu*, 65 Conn. App. 104, 109, 782 A.2d 169 (2001), rev'd on other grounds, 264 Conn. 449, 825 A.2d 48 (2003) (holding that warrant valid although description of place to be searched inaccurate).

"[T]he description of items to be seized in a warrant need only be as specific as the circumstances and the nature of the activity under investigation permit. . . . In construing the terms of a warrant, the circumstances and nature of the activity under investigation dictate a practical margin of flexibility. . . . This principle, which applies in the law of the execution of warrants, is consistent with the concomitant principle, which applies in the law of the validity of warrants, that probable cause is to be determined based on the totality of the circumstances, viewed in a common sense and practical manner." (Citations omitted; internal quotation marks omitted.) *State* v. *Montgomery*, 254 Conn. 694, 704, 759 A.2d 995 (2000). The warrant need not "enable authorities to minutely identify every item for which they are searching." (Internal quotation marks omitted.) *State* v. *Ruscoe*, 212 Conn. 223, 234, 563 A.2d 267 (1989), cert. denied, 493 U.S. 1084, 110 S. Ct. 1144, 107 L. Ed. 2d 1049 (1990).

The description of the items sought to be seized was as specific as the circumstances and nature of the activity under investigation permitted. The police were seeking items that would establish the defendant's residence

at the apartment. It would have been impossible to describe the objects sought with any great specificity, as they had no idea precisely what proof lay inside. See id.

The defendant asks us to require the inclusion of "illustrative lists" in such warrants. We decline his invitation. Such a mandate would contravene our particularity requirement jurisprudence, which is characterized by a practical margin of flexibility. *State* v. *Montgomery*, supra, 254 Conn. 704. Moreover, requiring illustrative lists would invite speculation on the part of the police.[6] Even if we assume that the warrant had included such a list, it is unlikely to have included X rays of the defendant, an automatic teller machine card, hospital bills, a motor vehicle infraction ticket and various child support payment documentation. Yet, all were found at the apartment and deemed admissible by the court. Although illustrative lists may be appropriate in certain circumstances, this case is not one of them.

In ruling on the defendant's motion to suppress, the court found, and we agree, that the "items clearly belonged to the defendant as his personal property and were found in [the apartment]. The items would, therefore, tend to prove that the defendant resided there. They are, therefore, relevant and fit within the category of items that was specified in the warrant . . . ." For that reason, the motion to suppress was denied in part.[7] Because that conclusion is legally and logically correct, we find that the court properly admitted into evidence

[6] We note that police discretion is severely curtained under Connecticut law. See, e.g., *Binette* v. *Sabo*, 244 Conn. 23, 43, 710 A.2d 688 (1998) ("police officer acting unlawfully in the name of the state possesses a far greater capacity for harm than an individual trespasser"); *State* v. *Marsala*, 216 Conn. 150, 159–72, 579 A.2d 58 (1990) (en banc) (no good faith exception to warrant requirement under Connecticut law).

[7] Because the prejudicial impact outweighed the probative value of four seized items that related to the defendant's prior incarceration, those items were ordered suppressed.

those items regarding proof of residence that were seized during the December 22, 2000 search of his apartment.

## IV

The defendant's final claim is that prosecutorial misconduct deprived him of his due process right to a fair trial.[8] Specifically, the defendant claims that the prosecutor improperly commented on both his failure to testify and facts not in evidence. Prosecutorial misconduct has become the criminal equivalent of the CUTPA[9] claim, seemingly attached to all criminal appeals whether meritorious or not. At oral argument, the defendant uttered not a single word as to his multiple prosecutorial misconduct claims.

Before addressing those specific claims, we set forth the principles that guide our inquiry. "To prove prosecutorial misconduct, the defendant must demonstrate substantial prejudice. . . . In order to demonstrate this, the defendant must establish that the trial as a whole was fundamentally unfair and that the misconduct so infected the trial with unfairness as to make the conviction a denial of due process." (Citations omitted; internal quotation marks omitted.) *State* v. *Singh*, 259 Conn. 693, 699–700, 793 A.2d 226 (2002). "[I]t is not the prosecutor's conduct alone that guides our inquiry, but, rather, the fairness of the trial as a whole." Id., 701.

In analyzing claims of prosecutorial misconduct, we engage in a two step analytical process. "The two steps are separate and distinct: (1) whether misconduct

---

[8] Only one of the defendant's prosecutorial misconduct claims was preserved properly. See part IV B. He requests review under *State* v. *Golding*, supra, 213 Conn. 239–40. Unpreserved claims of prosecutorial misconduct do not merit reversal unless they are blatantly egregious. See *State* v. *Peeler*, 267 Conn. 611, 640, 841 A.2d 181 (2004).

[9] See the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq.

occurred in the first instance; and (2) whether that misconduct deprived a defendant of his due process right to a fair trial. Put differently, misconduct is misconduct, regardless of its ultimate effect on the fairness of the trial; whether that misconduct caused or contributed to a due process violation is a separate and distinct question that may only be resolved in the context of the entire trial, an inquiry that in the present case necessarily will require evaluation of the defendant's other misconduct claims." *State* v. *Ceballos*, 266 Conn. 364, 381–82 n.29, 832 A.2d 14 (2003).

## A

The defendant first claims that the prosecutor improperly commented on his failure to testify. "[C]omment by the prosecuting attorney . . . on the defendant's failure to testify is prohibited by the fifth amendment to the United States constitution." (Internal quotation marks omitted.) *State* v. *Satchwell*, 244 Conn. 547, 570, 710 A.2d 1348 (1998). "The ultimate test of whether a prosecution argument indirectly and impermissibly comments on the defendant's failure to testify is whether, because of its language and context, the jury would naturally and necessarily interpret it as comment on the defendant's failure to testify." (Internal quotation marks omitted.) *State* v. *Downing*, 68 Conn. App. 388, 398, 791 A.2d 649, cert. denied, 260 Conn. 920, 797 A.2d 518 (2002).

During closing argument, the prosecutor stated: "[T]here was no explanation why the defendant had [an insurance policy that was seized during the search of the apartment] with his other personal documents. Where do you keep personal documents?" The defendant argues that a jury would naturally and necessarily interpret that statement as a comment on his failure to testify. We disagree.

The state is not prohibited from "calling to the jury's attention any portion of the evidence that stands uncontradicted . . . ." (Internal quotation marks omitted.) *State* v. *Forde*, 52 Conn. App. 159, 174, 726 A.2d 132, cert. denied, 248 Conn. 918, 734 A.2d 567 (1999). In the present case, the state introduced evidence that the defendant's Allstate insurance policy was found during the December 22, 2000 search of the apartment. That evidence was uncontested. Moreover, because the defendant made no objection to the statement at trial, we may presume that he did not consider it to be seriously prejudicial at the time it was made. See *State* v. *Reynolds*, 264 Conn. 1, 165, 836 A.2d 224 (2003); *State* v. *Robinson*, 227 Conn. 711, 745–46, 631 A.2d 288 (1993). We conclude that that the defendant has failed to establish that the prosecutor's statement was naturally and necessarily an improper comment on the defendant's failure to testify.[10]

B

The defendant next claims that the state improperly commented on facts that were not in evidence. The defendant attacks several remarks made by the prosecutor during closing argument.[11] On the basis of our review of the record, we conclude that those remarks concerned reasonable inferences that the jury could draw. "A prosecutor may invite the jury to draw reasonable inferences from the evidence; however, he or she may not invite sheer speculation unconnected to evi-

[10] The defendant also claims that the prosecutor's improper comment on his failure to testify diluted the state's burden of proof. Because we conclude that the defendant has not established the impropriety of the comment, his claim is without merit.

[11] Those remarks include the fact that the defendant had fixed the broken door, that the landlord for the apartment, Colin Fletcher, had testified that the defendant was the only person to whom he had rented the apartment, that the defendant had put his belongings in drawers, that guns are expensive and dangerous and that the defendant had tried to flee because the police had seen him.

dence." (Internal quotation marks omitted.) *State* v. *Ceballos*, supra, 266 Conn. 400. "[P]arties are allowed a certain degree of latitude to express their views of what evidence was presented at trial." *State* v. *McKiernan*, 78 Conn. App. 182, 201, 826 A.2d 1210, cert. denied, 266 Conn. 902, 832 A.2d 66 (2003).

The defendant also challenges the prosecutor's statement that defense counsel "did not ask the officers, 'Did you find toothbrushes and toothpaste in there?' " The defendant objected to that remark, and the court provided a curative instruction.[12] We agree with the defendant that the remark was improper; however, the prejudicial effect of the comment was mitigated by the court's curative instruction. See *State* v. *Ubaldi*, 190 Conn. 559, 563, 462 A.2d 1001 ("prompt cautionary instruction to the jury regarding improper prosecutorial remarks obviates any possible harm to the defendant"), cert. denied, 464 U.S. 916, 104 S. Ct. 280, 78 L. Ed. 2d 259 (1983); see also *State* v. *Velasco*, 253 Conn. 210, 246, 751 A.2d 800 (2000) ("[i]n the absence of an indication to the contrary, the jury is presumed to have followed [the] curative instructions").

C

When raising prosecutorial misconduct claims, the burden is on the defendant to show that the prosecutor's remarks were so prejudicial that he was deprived of a fair trial and the entire proceedings were tainted; *State* v. *Robinson*, supra, 227 Conn. 746; and in the case of

---

[12] The court instructed the jury in relevant part that "the attorneys, and in particular here, I'm focusing on the attorney for a defendant, is under no obligation to ask any particular questions of any witness. As a matter of fact, the attorney for the defendant is under no obligation whatsoever to ask any questions on cross-examination of any of the state's witnesses. So, the fact that an attorney may not have asked a particular question is not an indication of what the answer might have been had the question been asked. . . . I think that may be self-evident, but I think it's an important point."

unpreserved claims, to show that they were blatantly egregious. *State* v. *Peeler*, 267 Conn. 611, 640, 841 A.2d 181 (2004). "Although certain remarks made by the prosecutor, from hindsight, may be deemed imprudent, such isolated and brief episodes as occurred here fail to implicate the denial of the defendant's constitutional right to due process." *State* v. *Somerville*, 214 Conn. 378, 393, 572 A.2d 944 (1990). Indeed, the infrequency of the misconduct limits its effect. See *State* v. *Brown*, 71 Conn. App. 121, 136, 800 A.2d 674, cert. denied, 261 Conn. 940, 808 A.2d 1133 (2002). The prosecutor's remarks in the present case were infrequent and limited to closing argument. Moreover, the prejudicial effect of the one improper remark was mitigated by a curative instruction.

Accordingly, we conclude that the defendant has not satisfied his burden of showing that the prosecutor's conduct was blatantly egregious or so infected the trial with unfairness as to make the resulting conviction a denial of due process.

The judgment is affirmed.

In this opinion the other judges concurred.