STATE OF CONNECTICUT *v.* ERIC ALVAREZ
(AC 26478)

Flynn, C. J., and Schaller and Gruendel, Js.

540

Argued March 21—officially released May 23, 2006

*Katherine C. Essington*, special public defender, for the appellant (defendant).

*Jessica Probolus*, special deputy assistant state's attorney, with whom, on the brief, were *Scott J. Murphy*, state's attorney, and *Brian Preleski*, senior assistant state's attorney, for the appellee (state).

*Opinion*

FLYNN, C. J. The defendant, Eric Alvarez, appeals from the judgment of conviction, rendered following a jury trial, of robbery in the third degree in violation of General Statutes § 53a-136 and larceny in the third degree in violation of General Statutes § 53a-124 (a) (2). After a jury trial on a part B information that same day, the defendant also was found guilty of committing an offense while on release in violation of General Statutes § 53a-40b. He received a total effective sentence of thirty years incarceration, execution suspended after sixteen years, and five years probation. On appeal, the

defendant claims that (1) the trial court failed to question him adequately concerning his dissatisfaction with his attorney, which led to the court's failure to appoint substitute counsel, and (2) the prosecutor committed several instances of misconduct, depriving the defendant of due process and a fair trial. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On September 5, 2003, the defendant entered J. Roberts Jewelers in Bristol and informed Clayton Roberts, one of the owners of the store, that he was interested in purchasing something for his girlfriend. After being shown several rings, the defendant grabbed a five diamond wedding ring, worth $1400, and ran out of the store.[1] Roberts chased him for several blocks, but gave up the chase when he thought he saw the defendant remove a knife from his pocket. Later that day, the defendant sold the ring for some heroin. On September 12, 2003, Roberts picked out the defendant's photograph from an array shown to him by a detective from the Bristol police department. The defendant was arrested and brought to trial. He testified on his own behalf, admitting that he had stolen the ring to support his heroin addiction. He denied possessing a knife, however. Following his conviction, the defendant filed the present appeal. Additional facts will be set forth as necessary.

## I

On appeal, the defendant first claims that the court abused its discretion in the manner in which it responded to his complaints concerning his attorney. The defendant argues that the court should have questioned him further when he displayed some dissatisfaction with his appointed counsel. Additionally, he argues

---

[1] Roberts testified that the defendant grabbed this ring from Roberts' hand. The defendant testified that he grabbed the ring from the countertop.

that the court should have appointed substitute counsel. We disagree.

Our standard of review concerning the court's obligation to conduct an inquiry into the defendant's request for new counsel is the abuse of discretion standard. *State* v. *Hansen,* 39 Conn. App. 384, 399, 666 A.2d 421, cert. denied, 235 Conn. 928, 667 A.2d 554 (1995). "Where a defendant voices a seemingly substantial complaint about counsel, the court should inquire into the reasons for dissatisfaction. . . . When the defendant's concerns fall short of a seemingly substantial complaint, however, our Supreme Court has instructed that the trial court does not act improperly in failing to inquire into the reasons underlying the defendant's dissatisfaction with his attorney." (Citation omitted; internal quotation marks omitted.) *State* v. *Binnette,* 86 Conn. App. 491, 503–504, 861 A.2d 1197 (2004), cert. denied, 273 Conn. 902, 868 A.2d 745 (2005). Additionally, "[a] trial court does not abuse its discretion by failing to make further inquiry where the defendant has already had an adequate opportunity to inform the trial court of his complaints." *State* v. *Hansen,* supra, 399.

On August 6, 2004, just prior to beginning jury selection, the defendant requested to address the court. The following colloquy occurred:

"The Defendant: Can I speak?

"The Court: Yes, sir.

"The Defendant: Okay. There's going to be a problem if he's going to represent me because, listen, the guy has—he has pending cases in the habeas corpus courts, too. They're investigating this guy. I don't feel safe being here with him on my side. I mean, he's talking about I got to take the ten years or do pro se. If I do pro se, I won't understand what's going on.

"The Court: Well, you don't have to go pro se. [Your defense attorney] is ready, willing and able to represent you.

"The Defendant: Yeah, I know he's ready, willing and able. He's ready, willing and able to take my life away from me. I'm in twenty years, come on.

"The Court: Well, the charges—

" The Defendant: I feel threatened—I feel threatened because he's right here by me anyways.

"The Court: How do you mean you feel threatened, sir?

"The Defendant: I feel threatened. The guy—I mean, he's not going to do nothing for me.

"The Court: Well, [your defense attorney] has represented a lot of defendants in front of me—

"The Defendant: And he has also—

"The Court:—including people charged with—

"The Defendant:—he has also lost.

"The Court: Well, let me—I let you speak, sir, and I'll let you speak again, just let me say something for a minute. [Your defense attorney] has represented a lot of defendants in front of me, including defendants in murder cases. He has always done a fine job, as far as I could tell. Some of them have been convicted; some of them have been acquitted. That's the way it goes. I mean, I don't know anything about your case. But I know that if there are some problems with the state's case, [your defense attorney] is fully capable of exposing those problems to the jury and making sure that you get a fair trial and a fair opportunity to be found not guilty if that's what the evidence persuades the jury to do. So, based on my experience with [your

defense attorney]—you've never had a case with [your defense attorney] before, have you?

"The Defendant: No.

"The Court: He hasn't represented you before?

"The Defendant: No.

"The Court: Based on my experience with him and my observation of him, he does a fine job on behalf of his clients, and he has been successful in representing several of them. So, I don't think you should feel threatened that your die is cast here as far as whether you're going to be found guilty or not guilty. I mean, as I said, I don't know anything about your case. But if there are some problems with the state's case, [your defense attorney] is fully capable of exposing them to the jury. So, I don't want you to feel threatened and you're certainly not—it's certainly not a matter of taking the deal or going pro se. [Your defense attorney] is ready to represent you, and he will.

"So—and as far as I'm concerned, I'm going to be the judge presiding over the jury selection and the trial. If there are legal issues that come up that [your defense attorney] raises, and they're in your favor, then that's the way I'll decide them. If they're in the state's favor, then I'll decide them in favor of the state.

"So—I mean, I think, Mr. Alvarez, you're going to get a fair trial here, and [your defense attorney] is going to represent you effectively. I don't know what the evidence is going to show, but—

"The Defendant: They shouldn't show nothing.

"The Court: Well, maybe that's so, sir. So, what I want to know, Mr. Alvarez, is, when I bring these jurors down in the room, you know, they're going to be looking at you, they're going to be—the jurors are going to decide this case guilty or not guilty. Are you going to be on

good behavior so that we can—you can give them the best impression that you want them to have of yourself?

"The Defendant: Yes. I said, yeah.

"[Defense Counsel]: He said, yes.

"The Court: All right, sir. We're going to take a recess now. You'll go back into the holding area out there, and then we'll bring the jurors down and then we'll start the jury selection process."

The defendant offered no further comments or concerns regarding any dissatisfaction with his attorney or the desire to have substitute counsel appointed on his behalf.

Relying on *United States* v. *Gallop*, 838 F.2d 105, 108 (4th Cir.), cert. denied, 487 U.S. 1211, 108 S. Ct. 2858, 101 L. Ed. 2d 895 (1988), the defendant argues that "[i]n evaluating whether a trial court abused its discretion in denying the defendant's motion for substitution of counsel, an appellate court should consider the following factors: [t]he timeliness of the motion; the adequacy of the court's inquiry into the defendant's complaint; and whether the attorney-client conflict was so great that it resulted in a total lack of communication and prevented an adequate defense." Although it is not clear that the defendant requested or truly wanted substitute counsel when he addressed the court, even if we employ the factors requested by the defendant, we arrive at the conclusion that the court did not abuse its discretion when responding to the defendant's concerns regarding his attorney or any purported motion to substitute counsel.

First, the defendant asked to address the court just prior to the start of jury selection, and he stated that he had some reservations concerning appointed counsel. Even if we assume that the defendant was requesting substitute counsel, the timing of this request was the

eve of trial. "[C]ourts repeatedly have held that the proper administration of justice requires that . . . last-minute requests for change of counsel, absent some showing of great need, should be refused." *State* v. *Beaulieu*, 164 Conn. 620, 627, 325 A.2d 263 (1973).

Second, the record indicates that the court inquired into the defendant's complaint with regard to his counsel and specifically told the defendant that he could speak again after the court finished its statement, and the defendant did not attempt to speak again or attempt to raise additional concerns. The defendant told the court that he felt threatened by his counsel's representation because his defense attorney was "not going to do [anything] for [him]" and because counsel had ineffective assistance of counsel claims pending against him in the habeas court. The defendant did not state that he had conflicts with his attorney or imply that there were exceptional circumstances in this case. Although a reading of the transcript leads us to believe that the court cut off the defendant while he was explaining the reasons for his concerns, the court specifically told the defendant that he could address the court again, which the defendant did not attempt to do either immediately after the court finished speaking or at any other time. In the absence of any substantial complaint made by the defendant or the indication that he was precluded from offering such a complaint, we conclude that the court did not abuse its discretion in the manner in which it handled the defendant's concerns.

Third, there is nothing in the record that would demonstrate that a conflict between the defendant and his attorney existed at the time the defendant requested permission to address the court, so great that it resulted in a total lack of communication and prevented an adequate defense. Although the defendant argues in his brief that he and his attorney "had become embroiled in an irreconcilable conflict" because he believed that

his attorney had turned over confidential information to the prosecutor, there is nothing in the record before us to substantiate that the defendant had this belief at the time he addressed the court. Additionally, aside from the defendant's argument on this issue and his representation that he "eventually" filed a grievance against counsel, there is nothing in the record to substantiate his argument.[2] Reviewing the record before us, we can find nothing to demonstrate that a conflict, resulting in a total lack of communication such that it prevented an adequate defense, existed between the defendant and his attorney at the time the defendant requested to address the court. Accordingly, we conclude that the court did not abuse its discretion in the manner in which it addressed the defendant's concern or purported request for substitute counsel.

## II

The defendant next claims that he is entitled to a new trial because the prosecutor committed three instances of misconduct during cross-examination and final argument that resulted in a denial of due process and the right to a fair trial.[3] We agree that one of the remarks made by the prosecutor was improper but conclude that this isolated incident did not deprive the defendant of a fair trial.

In analyzing claims of prosecutorial misconduct, we conduct a two step inquiry. "The two steps are separate and distinct: (1) whether misconduct occurred in the first instance; and (2) whether that misconduct deprived a defendant of his due process right to a fair trial." (Internal quotation marks omitted.) *State* v. *Stevenson*, 269 Conn. 563, 572, 849 A.2d 626 (2004). If we determine that prosecutorial misconduct has occurred, we must then apply the six factors set out in *State* v.

---

[2] We also have no record of the alleged grievance.

[3] The defendant did not object to any of these comments at trial.

*Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987), to determine whether the misconduct reached a level so severe as to amount to a denial of due process and the right to a fair trial. See *State* v. *Stevenson*, supra, 573. The six *Williams* factors are "the extent to which the misconduct was invited by defense conduct or argument . . . the severity of the misconduct . . . the frequency of the misconduct . . . the centrality of the misconduct to the critical issues in the case . . . the strength of the curative measures adopted . . . and the strength of the state's case." (Internal quotation marks omitted.) Id. We begin by reviewing each of the three alleged instances of misconduct to determine whether misconduct actually occurred.

A

First, the defendant argues that the prosecutor committed misconduct when, during the closing argument in the part B trial,[4] the prosecutor improperly attempted to shift the burden of proof. We do not agree.

During the trial on the part B information, the state presented three witnesses who testified that when the defendant committed the crime in this case, he was out on bond on two separate cases. Certified copies of these bonds also were introduced as exhibits. The defendant did not call any witnesses on his behalf nor did he cross-examine the state's witnesses. In short, the evidence on the part B charge was uncontroverted. As the prosecutor was wrapping up his closing argument, after reviewing the evidence, he stated: "That's the evidence you have. I just point out that none of the witnesses were cross-examined, and the defense did not put on a case." The defendant claims that this statement was an improper attempt to shift the burden of proof, thus

---

[4] The trial on the part B information involved the charge of committing an offense while on release.

depriving him of a fair trial.[5] We conclude that the state properly was pointing out that the evidence was uncontroverted and that the state was not engaging in misconduct.

Our Supreme Court has recognized that "closing arguments of counsel, are seldom carefully constructed in toto before the event; improvisation frequently results in syntax left imperfect and meaning less than crystal clear. While these general observations in no way justify prosecutorial misconduct, they do suggest that a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations." (Internal quotation marks omitted.) *State* v. *Marra*, 222 Conn. 506, 533–34, 610 A.2d 1113 (1992).

As we explained in *State* v. *Jarrett*, 82 Conn. App. 489, 845 A.2d 476, cert. denied, 269 Conn. 911, 852 A.2d 741 (2004), "[t]he state is not prohibited from calling to the jury's attention any portion of the evidence that stands uncontradicted . . . ." (Internal quotation marks omitted.) Id., 503. In *Jarrett*, the defendant claimed that the prosecutor improperly had commented on the defendant's failure to testify, depriving him of the right not to testify and improperly attempting to shift the burden of proof, where the prosecutor, during closing argument, had commented on the lack of an explanation for why some evidence had been found with the defendant's personal papers. Id., 502–503. We explained that the prosecutor's comments were not improper because the state was permitted to discuss and to point out evidence that was uncontested by the defendant. Id., 503.

---

[5] The defendant does not argue that this statement interfered with his fifth amendment right against self-incrimination and, accordingly, we do not analyze it under the fifth amendment.

In the present case, the state had presented three witnesses in the part B trial. None of the witnesses was cross-examined, and the defendant called no witnesses on his behalf. This part B trial was on the charge of committing an offense while on release, and the defendant already had been found guilty in the first phase of trial. The comment by the prosecutor after the presentation of the uncontested evidence in the part B trial summed up the evidence during closing argument and, in short, reminded the jury that the evidence was uncontroverted. Under the particular circumstances of this case, where the same jury had found the defendant guilty, we conclude that this did not improperly shift the burden of proof and, accordingly, was not improper.

## B

The second instance of misconduct alleged by the defendant occurred when the prosecutor once referred to the defendant as a "110 pound *junk*[*ie*]"; (emphasis added); during rebuttal closing argument in the first phase of trial. The defendant argues that the use of the word "junkie" was an improper appeal to the prejudices of the jury. We agree. The term "junkie" is pejorative. It is a downgrading, disparaging term used to describe members of society who are addicted to narcotics or other drugs or substances having an effect similar to narcotics.

"It is well settled that [a] prosecutor may not appeal to the emotions, passions and prejudices of the jurors. . . . When the prosecutor appeals to emotions, he invites the jury to decide the case, not according to a rational appraisal of the evidence, but on the basis of powerful and irrelevant factors which are likely to skew that appraisal. . . . Therefore, a prosecutor may argue the state's case forcefully, [but] such argument must be fair and based upon the facts in evidence and the reasonable inferences to be drawn therefrom." (Internal

quotation marks omitted.) *State* v. *Sargent*, 87 Conn. App. 24, 38, 864 A.2d 20, cert. denied, 273 Conn. 912, 870 A.2d 1082 (2005).

The defendant testified that he had a heroin addiction and that he stole to support that habit. Additionally, defense counsel argued in his closing statement that the defendant stole the ring because he had a drug problem and "needed a fix." The defendant had not characterized himself as a "junkie" and, therefore, use of the term by the prosecutor could not be justified on the basis of the defendant's use of that same term as was the case in *State* v. *Moore*, 49 Conn. App. 13, 30, 713 A.2d 859 (1998), in which we found that use of terms like "thief" and "robber" were justified because the defendant had characterized himself in that manner. We accordingly conclude that the comment was improper.

C

The final instance of alleged misconduct raised by the defendant occurred when, during cross-examination, the prosecutor allegedly suggested that the defendant was guilty of additional uncharged misconduct. The defendant argues that the prosecutor, on more than one occasion during cross-examination of the defendant, referred to a "conspiracy," a crime with which the defendant had not been charged. Additionally, the defendant argues that the prosecutor improperly inquired into the defendant's possible involvement in the sale of stolen goods, another crime with which the defendant had not been charged. The defendant did not object to these questions nor did he request a curative instruction. Nevertheless, he claims for the first time on appeal that the questions were improper and prejudicial, and that the court should have, sua sponte, given a curative instruction to the jury. We conclude that this

questioning was not improper but was based on the defendant's own testimony.

"We first examine the level of deference accorded to counsel when cross-examining a witness. In general, the court has wide discretion in setting the scope of cross-examination. . . . Although cross-examination is limited to the subject matter of the direct examination . . . the cross-examiner may elicit not only any fact that would tend to contradict or to qualify any particular fact stated on direct examination, but also anything that would tend to modify any conclusion or inference resulting from the facts so stated." (Citations omitted.) *State* v. *Vazquez*, 79 Conn. App. 219, 226, 830 A.2d 261, cert. denied, 266 Conn. 918, 833 A.2d 468 (2003). "Generally, a party who delves into a particular subject during the examination of a witness cannot object if the opposing party later questions the witness on the same subject. . . . The party who initiates discussion on the issue is said to have opened the door to rebuttal by the opposing party." (Citations omitted; internal quotation marks omitted.) *State* v. *Graham*, 200 Conn. 9, 13, 509 A.2d 493 (1986).

On direct examination, the defendant testified that he stole items in order to sell them to support his drug habit. He also testified that in this particular case, after stealing the ring from J. Roberts Jewelers, he ran from the store and was waiting for someone to pick him up. In response to this testimony, the prosecutor, on cross-examination, questioned the defendant about who was supposed to pick him up after the theft. The defendant responded to these questions by testifying that he "had somebody waiting for [him]" and this person, the getaway driver, also was involved in the plan to steal the ring. When the prosecutor asked the defendant, "[W]ho [was] your coconspirator?" the defendant responded, "I'll just say Edman." The prosecutor then inquired further about the defendant's relationship with Edman and

what they had been doing shortly before the theft of the ring. The defendant responded by telling the prosecutor that Edman had some items that he wanted to sell, and the defendant told Edman where he could sell them. The prosecutor then asked the defendant if the items were stolen, to which the defendant responded that he did not want to say.

First of all, the prosecutor's reference to a "conspiracy" or a "coconspirator" directly related to the evidence and the testimony offered by the defendant. The defendant testified on direct examination that he was waiting for someone to pick him up after he had stolen the ring, and, on cross-examination, he further stated that this person was involved in the plan to steal the ring. A conspiracy is defined as "[a]n agreement by two or more persons to commit an unlawful act . . . ." Black's Law Dictionary (7th Ed. 1999). The defendant's own testimony fits within this definition.

As to the prosecutor's elicitation of what the defendant and Edman had been doing prior to the theft of the ring, it was the defendant, himself, who offered the testimony concerning Edman's wanting to sell some items. "We recognize that evidence of guilt of other crimes is normally inadmissible because of the danger that the jury will infer that if a person committed an earlier crime he probably committed the present crime as well. . . . This rule, however, is not without its exceptions. . . . [Where] [t]he field of inquiry [is] opened by the defendant . . . he cannot complain if the state attempt[s] to clarify that field, even if the evidence would otherwise be inadmissible." (Citation omitted; internal quotation marks omitted.) *State* v. *Delosantos*, 13 Conn. App. 386, 389, 536 A.2d 609 (1988).

Finally, as to the defendant's argument that this line of questioning was unfairly prejudicial, we reiterate that "[e]vidence that is inadmissibly prejudicial is not to be

confused with evidence that is merely damaging. . . . All evidence adverse to a party is, to some degree, prejudicial." (Internal quotation marks omitted.) *State* v. *Vazquez*, supra, 79 Conn. App. 228. We conclude in this case that the prosecutor merely was responding to the defendant's own testimony and not engaging in misconduct. See id. ("given the considerable leeway allowed to counsel on cross-examination to delve into subjects that have been even tangentially broached or their consequent inferences, the prosecutor's line of questioning . . . was not improper").

D

In applying the *Williams* factors to the improper use of the term "junkie" by the prosecutor, we conclude that the improper use of that pejorative did not deprive the defendant of a fair trial. There was no objection by the defendant. The term was used only once. There was no dispute that the defendant, and not some other person, had at least committed a larceny, and, therefore, the case was strong. No curative instruction was sought. The use of the term was not invited by defense conduct or argument. Use of the term was not central to either the part A or the part B informations.

The part A information revolved around the issue of whether the defendant had committed his admitted larceny by force. The part B information addressed only whether the defendant had committed an offense while on release.

Such pejoratives as the word "junkie" are improper because they are a distraction from the jury's duty and tend to stigmatize a defendant who, while on trial, still must be treated with dignity and respect. Our Supreme Court has discouraged the use of "personal and degrading epithets to describe the defendant." *State* v. *Williams*, supra, 204 Conn. 545. In light of the entire trial record and the application of the *Williams* factors, how-

ever, the isolated use of this term did not deprive the defendant of a fair trial.

The judgment is affirmed.

In this opinion the other judges concurred.