******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* MARK T.*
(AC 40439)

Keller, Bright and Pellegrino, Js.

*Syllabus*

Convicted of the crime of risk of injury to a child in connection with an incident in which he dragged the victim, his minor daughter, through the corridors of her school in an effort to take her to a counseling appointment at a mental health facility, the defendant appealed to this court. He claimed, inter alia, that the trial court improperly precluded testimony about the victim's violent disposition, which bore on whether he used a reasonable amount of force when he attempted to remove her from the school, where she was enrolled in a behavioral support class for children who are prone to disruptive behavior. When W, the victim's special education teacher, accompanied the victim to the school's front office to meet the defendant, he approached the victim in a hallway and unsuccessfully attempted to persuade her to go with him. The defendant then attempted to pick her up and carry her, but she resisted, and the defendant then dragged her toward the exit. *Held*:

1. The defendant could not prevail on his claim that the trial court improperly precluded him from questioning W about whether the victim had been violent with others at school, which was based on his assertion that his questions were not beyond the scope of the state's redirect examination of W; that court acted within its discretion to limit the defendant's inquiry, as it did not relate to W's capacity to recall accurately the incident at issue, which was the only subject of the state's redirect examination, W testified generally about the victim's past disruptive and oppositional behavior, and, to the extent that her behavioral history was relevant to the defendant's subjective belief that the amount of force he used during the incident at school was reasonable to maintain discipline, that issue was not raised during the state's redirect examination, and the defendant could have called W to testify if he had wanted to explore that line of inquiry further.

2. The defendant could not prevail on his claim that the trial court improperly sustained the state's objections to his testimony about the victim's misbehavior at home and how desperate he was to obtain treatment for her, which was based on his assertion that without such context, his defense of parental justification was hamstrung and toothless; the court's preclusion of the name of the mental health institution where the defendant was trying to take the victim for treatment did not render his theory of defense toothless, as certain details about the victim and the name of the institution, which had been placed under seal, were not material to the defense of parental justification, and it was clear from the record that the court allowed the defendant to testify about his difficult relationship with the victim, her misbehavior at home, his belief that she needed urgent mental health treatment, and the fact that he had obtained a more significant type of help for her than an after-school program.

Argued September 6—officially released November 27, 2018

*Procedural History*

Substitute information charging the defendant with the crimes of risk of injury to a child and breach of the peace in the second degree, brought to the Superior Court in the judicial district of New London, geographical area number ten, where the court, *Jongbloed, J.*, granted in part the state's motion to preclude certain evidence and denied the defendant's motion to dismiss; thereafter, the matter was tried to the jury; verdict of guilty of risk of injury to a child; subsequently, the court rendered judgment in accordance with the verdict, from which the defendant appealed to this court. *Affirmed.*

*Robert L. O'Brien*, assigned counsel, with whom, on the brief, was *William A. Adsit*, assigned counsel, for the appellant (defendant).

*Rita M. Shair*, senior assistant state's attorney, with whom were *Michael L. Regan*, state's attorney, and, on the brief, *Sarah E. Steere*, senior assistant state's attorney, for the appellee (state).

*Opinion*

PELLEGRINO, J. The defendant, Mark T., appeals from the judgment of conviction, rendered after a jury trial, of one count of risk of injury to a child in violation of General Statutes § 53-21 (a) (1). On appeal, the defendant claims that the trial court abused its discretion by excluding relevant evidence, and thereby violated his constitutional right (1) to present a defense and (2) to testify in his own defense. We disagree and, therefore, affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The defendant, who was thirty-five years of age, had maintained custody of his biological daughter, the victim, for hardly three weeks at the time of the incident. The victim was thirteen, in the eighth grade, and enrolled in an intensive behavioral support class for children who were prone to disruptive behavior. At home, the defendant had significant difficulty maintaining control of the victim. He therefore arranged for the victim to participate in independent after-school counseling at a local mental health facility.

On the morning of September 9, 2015, the defendant arrived at the victim's school to take her to her scheduled appointment at the mental health facility. The front office secretary contacted the victim's classroom to inform Monika Wilkos, the victim's special education teacher, that the defendant had arrived in the main office to pick up the victim. As the victim was gathering her belongings in the classroom, she protested in front of Wilkos, stating that she did not want to go with the defendant. Wilkos asked the victim to accompany her to the front office, and while en route, the defendant approached the victim and Wilkos in the hallway.

After a number of unsuccessful attempts to persuade the victim to come with him, the defendant attempted to pick her up and carry her. When the victim resisted, a tussle ensued, and the defendant dragged the victim by one leg through the school corridors toward the exit. School personnel called the police. By the time police arrived, the defendant had dragged the victim through the front office and into the foyer. When he saw the police, the defendant released the victim. The police interviewed the defendant and school staff, but took no further actions.

The following day, both the school psychologist and the school nurse spoke to the victim regarding the incident. During the interviews, they both noticed bruising on the victim's body and subsequently reported the incident to the Department of Children and Families (department). A police officer assigned to the school district investigated the incident and, thereafter, an arrest warrant was issued for the defendant. After learning of the arrest warrant, the defendant turned himself in to the police without incident.

The operative information charged the defendant with one count of risk of injury to a child in violation of § 53-21 (a) (1) and one count of breach of the peace in the second degree in violation of General Statutes § 53a-181 (a) (1). During multiple pretrial hearings, the defendant insisted on representing himself despite the court's many warnings about the dangers of self-representation.[1] The defendant refused court-appointed counsel, but the court ultimately assigned the defendant standby counsel in accordance with Practice Book § 44-4.

Before trial, the state filed, among other things, a motion in limine requesting that the name, address, and any other identifying information pertaining to the victim be kept confidential pursuant to General Statutes § 54-86e. The victim's guardian ad litem also argued in favor of the motion, underscoring the harmful impact that disclosure of sensitive facts could have on the victim. The defendant objected, claiming that details of his relationship with the victim were necessary to demonstrate his urgent need to get help for the victim. The court granted the motion in part and ordered that only the victim's first initial be used in the record and at trial. The court also ordered that the defendant's pretrial motions containing the name of the victim and the name of the program that the defendant was planning to take her to be placed under seal for the purposes of the record. The court further ordered that it would rule on the admissibility of other facts as they arose at trial.

On September 19, 2016, following a three day jury trial, the jury found the defendant guilty of risk of injury to a child, but not guilty of breach of the peace in the second degree. On April 4, 2017, the court imposed a total effective sentence of four years imprisonment, execution suspended, with three years of probation. This appeal followed. Additional facts will be set forth as necessary.

The defendant's appeal is predicated on his contention that the trial court deprived him of his constitutional right (1) to present a defense and (2) to testify in his own defense in violation of the fifth, sixth, and fourteenth amendments to the federal constitution.[2] Specifically, the defendant argues that the court erred when it excluded evidence relevant to his theory of defense of parental justification by limiting his inquiry with respect to the victim's violent behavior toward others at school. He further claims that when he testified in his own defense, the trial court unconstitutionally limited his testimony with respect to his struggles with the victim's behavior, and her history of extreme and physical opposition. He argues that because the jury did not hear this evidence, it was unable to fully understand the urgent need to get the victim mental health treatment. The state argues that the trial court

did not abuse its discretion when it limited certain aspects of the defendant's testimony. Specifically, the state argues that the trial court gave the defendant wide latitude with respect to his presentation of evidence and did not abuse its discretion when it excluded evidence that was beyond the scope of redirect examination or of a collateral nature. In other words, the state argues that the defendant's claims are not of a constitutional nature but, rather, are evidentiary. As an initial matter, we agree with the state that the defendant's claims are not of a constitutional magnitude and, instead, are evidentiary in nature.

"Regardless of how the defendant has framed the issue, he cannot clothe an ordinary evidentiary issue in constitutional garb to obtain [a more favorable standard of] review." (Internal quotation marks omitted.) *State* v. *Warren*, 83 Conn. App. 446, 452, 850 A.2d 1086, cert. denied, 271 Conn. 907, 859 A.2d 567 (2004). "[R]obing garden variety claims [of an evidentiary nature] in the majestic garb of constitutional claims does not make such claims constitutional in nature. . . . Putting a constitutional tag on a nonconstitutional claim will no more change its essential character than calling a bull a cow will change its gender." (Internal quotation marks omitted.) *State* v. *Rosario*, 99 Conn. App. 92, 99 n.6, 912 A.2d 1064, cert. denied, 281 Conn. 925, 918 A.2d 276 (2007).

Furthermore, "[t]hese . . . [constitutional] rights, although substantial, do not suspend the rules of evidence . . . . A court is not required to admit all evidence presented by a defendant; nor is a court required to allow a defendant to engage in unrestricted cross-examination. . . . Instead, [a] defendant is . . . bound by the rules of evidence in presenting a defense . . . ." (Internal quotation marks omitted.) *State* v. *Holley*, 327 Conn. 576, 594, 175 A.3d 514 (2018). Moreover, "[i]t is axiomatic that [t]he trial court's ruling on the admissibility of evidence is entitled to great deference. . . . In this regard, the trial court is vested with wide discretion in determining the admissibility of evidence, including issues of relevance and the scope of cross-examination. . . . [T]he trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . In determining whether there has been an abuse of discretion, every reasonable presumption should be made in favor of the correctness of the trial court's ruling, and we will upset that ruling only for a manifest abuse of discretion." (Internal quotation marks omitted.) *State* v. *Ramos*, 182 Conn. App. 604, 614–15, 190 A.3d 892, cert. denied, 330 Conn. 917,     A.3d     (2018). Accordingly, we review the defendant's claims under the abuse of discretion standard.

I

The defendant first claims that the trial court improp-

erly precluded testimony regarding the victim's violent disposition, which bore on whether the defendant used a reasonable amount of force when he attempted to remove the victim from school. Specifically, he argues that the court erred when it precluded questions posed to Wilkos with respect to whether the victim had been violent with others at school. The defendant argues that his questions were not beyond the scope of the redirect examination because Wilkos experienced the victim's misbehavior firsthand and, in her response to the state's redirect examination, raised the issue of physical altercations between children and school officials. We disagree.

The following facts are relevant to the disposition of this claim. At trial, during the state's presentation of evidence, the victim's special education teacher, Wilkos, testified about the nature of the school's intensive behavioral education program, which she described as a "self-contained educational, therapeutic program for students with emotional disturbance and behavior difficulties." She testified that the victim had been identified through an early intervention program as a candidate for special education because of her emotional disturbances. She further testified about the incident and how the victim's behavior that day was consistent with her history of disorderly conduct.

On cross-examination, however, Wilkos admitted that she was uncertain about certain details surrounding the altercation, but because she had never seen a parent dragging a child by the foot through school, her memory of the incident was still quite vivid. During redirect examination, in response to Wilkos' admission that she was unsure about the precise mechanics of the altercation, the prosecutor asked Wilkos how long she had been a teacher, and, whether in that time, she had ever seen anything like the September 9, 2015 incident. Wilkos responded that she had been a teacher for approximately thirteen years, and that in that time she had never seen anything like the incident between the victim and the defendant. She also stated that, as a result, the incident was still quite vivid in her memory. Wilkos testified: "[I]t's a vivid recollection. Some of the specifics of which arm went where in what sequence isn't, like, clear, but it's a very clear recollection . . . ."

During the subsequent recross-examination that followed, the defendant addressed Wilkos' redirect testimony by inquiring whether the victim had ever been disruptive in Wilkos' class. Wilkos answered that September 9, 2015, was not the first time the victim had been disruptive, and that every child in her class had behavioral issues. The defendant then asked whether the victim had been violent with anyone else in school. The state objected to the question, and the court sustained the objection. The defendant then attempted to

ask whose idea it was to enroll the victim in the intensive care program at school. The state again objected, and the court sustained the objection, stating that it was outside the scope of the redirect examination.

Here, the question of whether the trial court abused its discretion hinges on whether the victim's prior violent behavior toward others at school was within the scope of the state's redirect examination of Wilkos. With this in mind, the following legal principles are relevant to the disposition of the defendant's claim. Section 6-8 (a) of the Connecticut Code of Evidence provides: "Cross-examination and subsequent examinations shall be limited to the subject matter of the preceding examination and matters affecting the credibility of the witness, except in the discretion of the court." Additionally, our Supreme Court has stated: "[I]n . . . matters pertaining to control over cross-examination, a considerable latitude of discretion is allowed. . . . The determination of whether a matter is relevant or collateral, and the scope and extent of cross-examination of a witness, generally rests within the sound discretion of the trial court. . . . Every reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." (Internal quotation marks omitted.) *State* v. *Moore*, 293 Conn. 781, 790, 981 A.2d 1030 (2009), cert. denied, 560 U.S. 954, 130 S. Ct. 3386, 177 L. Ed. 2d 306 (2010).

In the present case, the prosecutor's questions on redirect examination specifically related to Wilkos' experience as a teacher and her ability to remember the incident accurately. The state was rehabilitating Wilkos' testimony after she had admitted on cross-examination that she did not remember the precise physical sequence of the altercation—whereas the defendant's questions related to whether the victim had ever been violent with other students at school. It is important to underscore that, contrary to the defendant's argument, the trial court did allow Wilkos to testify generally about the victim's past disruptive behavior. The trial court's limiting of the defendant's line of inquiry with respect to the victim's violent behavior toward others in school, therefore, was well within its discretion to preclude examination that was beyond the scope of the redirect examination of Wilkos.

Furthermore, to the extent that the victim's behavioral history may have been relevant to the defendant's subjective belief that the amount of force he used during the incident was reasonable to maintain discipline, the issue simply was not raised during the state's redirect examination. Moreover, the jury heard testimony from Wilkos during her recross-examination regarding the victim's oppositional behavior. Had the defendant wanted to explore this line of inquiry further, he could have called Wilkos as his own witness and controlled

the scope of the examination.

In sum, because the defendant's inquiry as to whether the victim was violent toward others did not relate to Wilkos' capacity to recall the incident at issue accurately, which was the only subject of the state's redirect examination, the trial court acted within its discretion to sustain the state's objection to the inquiry on the ground that it was outside the scope of the state's redirect examination. See *State* v. *Holley*, supra, 327 Conn. 594 ("These sixth amendment rights, although substantial, do not suspend the rules of evidence . . . . A court is not required to admit all evidence presented by a defendant; nor is a court required to allow a defendant to engage in unrestricted cross-examination." [Internal quotation marks omitted.]); see also *State* v. *Moore*, supra, 293 Conn. 803 ("[o]nce [a] defendant has been permitted cross-examination sufficient to satisfy the sixth amendment, restrictions on the scope of cross-examination are within the sound discretion of the trial judge" [internal quotation marks omitted]). The defendant's claim, therefore, fails.

## II

The defendant next claims that he was prevented from testifying about the victim's extreme misbehavior at home, which he argues was relevant because it demonstrated how desperate he was to obtain mental health treatment for her. Without this context, he claims, his defense of parental justification was "effectively [hamstrung] and toothless." He also argues that the testimony directly bore on the reasonableness of his actions because it demonstrated the severity and urgency of the situation at home, and that without it, the jury had no evidence to suggest that the defendant was justified in his actions. We disagree.

Whether a particular piece of evidence or testimony is admissible hinges on whether it is relevant to a material issue before the court. "As it is used in our code [of evidence], relevance encompasses two distinct concepts, namely, probative value and materiality. . . . Conceptually, relevance addresses whether the evidence makes the existence of a fact material to the determination of the proceeding more probable or less probable than it would be without the evidence. . . . In contrast, materiality turns upon what is at *issue* in the case, which generally will be determined by the pleadings and the applicable substantive law." (Emphasis in original; internal quotation marks omitted.) *State* v. *Maner*, 147 Conn. App. 761, 768, 83 A.3d 1182, cert. denied, 311 Conn. 935, 88 A.3d 550 (2014).

Moreover, General Statutes § 53a-18 provides in relevant part: "The use of physical force upon another person which would otherwise constitute an offense is justifiable and not criminal under any of the following circumstances: (1) A parent, guardian or other person

entrusted with the care and supervision of a minor or an incompetent person . . . may use reasonable physical force upon such minor or incompetent person when and to the extent that he reasonably believes such to be necessary to maintain discipline or to promote the welfare of such minor or incompetent person . . . ."

The issue of "[w]hether the force used by a parent under § 53a-18 (1) is justifiable and not criminal depends on whether it is reasonable physical force that the parent believes to be necessary to maintain discipline or to promote the welfare of [the] minor . . . . While there exists a parental right to punish children for their own welfare, to control and restrain them and to adopt disciplinary measures in the exercise of that right, whether the limit of reasonable physical force has been reached in any particular case is a factual determination to be made by the trier of fact." (Internal quotation marks omitted.) *State* v. *Brocuglio*, 56 Conn. App. 514, 517–18, 744 A.2d 448, cert. denied, 252 Conn. 950, 748 A.2d 874 (2000). In other words, the defense of parental justification requires both subjective and objective reasonableness on behalf of the parent or guardian with respect to the use of physical force.

With this legal framework in mind, we now set forth the following facts that are relevant to the disposition of the defendant's claim. During the defendant's case-in-chief, he presented evidence with respect to the incident at school, the nature of his relationship with the victim, and whether he intended to harm the victim during the incident. Specifically, the defendant testified about the victim's misbehavior at home. The court permitted the defendant's testimony that the victim ran away from home on a nightly basis and that, as a result, the police visited the defendant's home daily. The court also allowed the defendant to testify that he sought help from a number of sources, including the department, but that no one was willing to help him, and, as a result, he was concerned that the victim would end up in foster care. The defendant testified that he "urgently needed help dealing with [the victim's] behaviors . . . [and that he] reached out to [the department] on many occasions . . . ." The state objected on relevancy grounds, but the court overruled the objection. The defendant then continued to testify about the nature of the appointment he scheduled for the victim, and the state again objected. The court again overruled the objection and allowed the testimony to stand.

The defendant claims, however, that during his direct examination, which he conducted himself, the court abused its discretion by precluding his testimony with respect to the following exchange:

"[The Defendant]: So, Mr. [T.], [where] did you go to get your daughter help?

"[The Prosecutor]: Objection, Your Honor, relevancy

to the case at hand.

"The Court: Well, I'll allow a limited amount of this.

"[The Defendant]: Okay, so this isn't really allowed. . . .

"[The Defendant]: So, Mr. [T.], at almost the end of that month that you had your daughter, what happened that she was taken away from you again?

"[The Defendant]: Well, I needed help with her, and I made an appointment to get her the help that she needed, which was—

"[The Prosecutor]: Objection, Your Honor.

"The Court: Sustained.

"[The Defendant]: Okay. The help that she needed, which was not just some after-school program; it was much more significant.

"[The Prosecutor]: Objection, Your Honor.

"[The Defendant]: Okay.

"The Court: I'll allow that answer to stand."

The defendant claims that without this testimony identifying the name of the institution, his defense of parental justification was "toothless." We disagree with the defendant that the court's preclusion of the name of the institution rendered his theory of defense "toothless." We also disagree with the defendant that the court prevented him from testifying about the victim's misbehavior at home and the urgency of the situation. It is clear from the record that the court allowed the defendant to testify about his difficult relationship with the victim, including factors that supported his subjective belief that the victim needed urgent mental health treatment. Furthermore, it is clear from the record that the defendant was permitted to testify that ultimately he obtained a more significant type of help for the victim than just an after-school program. Rather, it was only when the defendant attempted to provide details about the help he sought for her—information that had been placed under seal during the hearing on the state's motion in limine to protect the victim—that the trial court sustained the state's objections. The trial court's preclusion of the defendant's testimony with respect to certain details about the victim and the name of the mental health institution, which were not material facts, was well within its discretionary authority.

Given that the trial court had a legitimate interest in excluding sensitive details about the victim—especially those that were not material to the defendant's defense of parental justification—the court did not abuse its discretion when it sustained the state's objections.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with our policy of protecting the privacy interests of the victims of the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[1] On more than one occasion, the court canvassed the defendant in accord with Practice Book § 44-3 (4), ensuring that he was aware of the dangers and disadvantages of self-representation. The record also indicates that the state offered a series of plea agreements to the defendant. On May 4, 2016, the state offered an alternative disposition if the defendant would accept the lesser charge of breach of the peace, a misdemeanor. On July 29, 2016, the state offered an alternative disposition if the defendant would accept a charge of creating a public disturbance, a simple infraction. And finally, on August 4, 2016, the state presented the defendant with a nolle prosequi offer that provided that the state would not pursue any charges, so long as the defendant completed a court-approved parenting course. The defendant rejected the offers.

[2] Although the defendant also asserts a violation of our state constitution, he has provided no independent state constitutional analysis. We thus limit our review to the defendant's federal constitutional claim. See *State* v. *Jarrett*, 82 Conn. App. 489, 498 n.5, 845 A.2d 476, cert. denied, 269 Conn. 911, 852 A.2d 741 (2004).