# STATE OF CONNECTICUT *v.* MARK T.*
## (SC 20242)

Robinson, C. J., and Palmer, McDonald, D'Auria,
Mullins, Kahn and Ecker, Js.**

*Syllabus*

Convicted of the crime of risk of injury to a child, the defendant appealed
   to the Appellate Court. His conviction stemmed from an incident in
   which he dragged his daughter, A, down the hallway of the school that
   A was attending in an effort to take her, despite her protests, to a
   counseling appointment at a mental health facility. W, A's teacher, wit-
   nessed the incident. At trial, the defendant, who was self-represented,
   raised the defense of parental justification. In support of his defense,
   the defendant attempted to elicit testimony from W about A's history
   of aggressive behavior at school. He also attempted to testify directly
   about A's aggressive behavior at home, his difficulty managing that

---

\* In accordance with our policy of protecting the privacy interests of the
alleged victim of the crime of risk of injury to a child, we decline to identify
the minor child or others through whom her identity may be ascertained.
See General Statutes § 54-86e.

\*\* The listing of justices reflects their seniority status on this court as of
the date of oral argument.

State *v.* Mark T.

behavior, and his efforts to obtain mental health treatment for her leading up to the incident. The prosecutor, however, repeatedly objected to this line of questioning, and the trial court sustained many of the objections. On appeal to the Appellate Court, the defendant claimed, inter alia, that the trial court had violated his constitutional right to present a defense by limiting his cross-examination of W and his direct examination of himself. The defendant specifically contended that the trial court's evidentiary rulings precluded him from exploring information relevant to his parental justification defense. The Appellate Court affirmed the trial court's judgment, and the defendant, on the granting of certification, appealed to this court. *Held*:

1. The Appellate Court correctly determined that the trial court had not abused its discretion when it precluded the defendant from asking W, during cross-examination, whether she had ever seen A become physical with another person at school, as the trial court could have reasonably concluded that the defendant's question was beyond the scope of permissible examination; the trial court reasonably could have defined the scope of the prosecutor's preceding examination of W as being limited to rehabilitation, which the prosecutor sought after the defendant had elicited testimony from W that cast doubt on the accuracy of W's recollection about a certain incident, and the defendant's question about A's history of physical aggression would not have cast further doubt on the strength of W's recollection or otherwise have rebutted the inference that the incident in question was memorable.

2. The trial court abused its discretion by limiting the defendant's direct examination of himself, during which he attempted to testify about information crucial to his parental justification defense: the testimony that the defendant sought to elicit from himself would have tended to make certain important facts either more or less probable, including A's behavioral problems and history of violence, the urgency of the defendant's need to get help for her, and the time sensitive nature of A's departure from school, and those facts were material to the reasonableness of the defendant's use of physical force, which was the core of his defense; moreover, the trial court's error was harmful, as the jury's evaluation of the defendant's subjective belief that his actions were necessary to promote A's welfare was likely substantially impaired by the defendant's inability to testify regarding the specific circumstances that led to A's mental health appointment, the jury's ability to ascertain the objective reasonableness of the defendant's actions was similarly hampered because it could not extrapolate what a reasonable parent would have done in the defendant's position without fully comprehending the defendant's position, and, contrary to the state's claim, the precluded testimony would not have been cumulative of other admitted testimony because virtually no specific details about the nature of A's behavior in her interactions with the defendant were admitted into evidence.

State *v.* Mark T.

(*Three justices concurring in part and
dissenting in part in one opinion*)

Argued January 21, 2020—officially released June 7, 2021***

*Procedural History*

Substitute information charging the defendant with
the crimes of risk of injury to a child and breach of the
peace in the second degree, brought to the Superior
Court in the judicial district of New London, geographi-
cal area number ten, where the court, *Jongbloed, J.*,
granted in part the state's motion to preclude certain
evidence and denied the defendant's motion to dismiss;
thereafter, the case was tried to the jury before *Jong-
bloed, J.*; verdict and judgment of guilty of risk of injury
to a child, from which the defendant appealed to the
Appellate Court, *Keller*, *Bright* and *Pellegrino*, *Js.*,
which affirmed the trial court's judgment, and the defen-
dant, on the granting of certification, appealed to this
court. *Reversed*; *new trial.*

*Robert L. O'Brien*, assigned counsel, with whom, on
the brief, was *William A. Adsit*, assigned counsel, for
the appellant (defendant).

*Brett R. Aiello*, deputy assistant state's attorney, with
whom were *Sarah E. Steere*, senior assistant state's
attorney, and, on the brief, *Michael L. Regan*, former
state's attorney, for the appellee (state).

*Opinion*

McDONALD, J. This case requires us to evaluate sev-
eral evidentiary rulings by the trial court, all of which
excluded testimony pertaining to a criminal defendant's
justification defense. The defendant, Mark T., who was
self-represented at trial, claims that these evidentiary
rulings violated his constitutional right to present a
defense under the fifth, sixth, and fourteenth amend-

*** June 7, 2021, the date that this decision was released as a slip opinion,
is the operative date for all substantive and procedural purposes.

State *v.* Mark T.

ments to the United States constitution.[1] The state contends that the trial court properly exercised its discretion to exclude the testimony and disputes the importance of the testimony to the defendant's defense. Regarding the first evidentiary issue, we agree with the state that the trial court did not abuse its discretion by excluding certain testimony during the defendant's cross-examination of the state's key eyewitness. However, we conclude that the trial court abused its discretion by limiting the defendant's direct examination of himself, during which he attempted to testify about information crucial to his justification defense. We also conclude that the trial court's error was harmful.

The Appellate Court's decision sets forth the facts and procedural history; *State* v. *Mark T.*, 186 Conn. App. 285, 287–90, 199 A.3d 35 (2018); which we summarize in relevant part and supplement with additional facts that the jury reasonably could have found. In September, 2015, the defendant maintained custody of his biological daughter, A, who was thirteen years old at the time, for about three weeks. He scheduled an appointment for her to receive counseling at a local mental health facility because he was experiencing significant difficulty managing her aggressive behavior. On the day of the appointment, the defendant arrived at the main office of A's school to pick her up. A's special education teacher, Monika Wilkos, escorted A to her locker to gather her belongings. While leaving the classroom and gathering her belongings, A repeatedly protested and stated that she did not want to go with the defendant.

_____

[1] Although the defendant also claims that the trial court's evidentiary rulings violated his right to present a defense under article first, § 8, of the Connecticut constitution, he has provided no separate analysis of that issue. Accordingly, we limit our review to his federal constitutional claims. See, e.g., *Ramos* v. *Vernon*, 254 Conn. 799, 815, 761 A.2d 705 (2000) ("[w]ithout a separately briefed and analyzed state constitutional claim, we deem abandoned the [party's] claim" (internal quotation marks omitted)).

State *v.* Mark T.

The defendant then approached A and Wilkos while they were on their way to the main office, and he calmly attempted to persuade A to go with him to the appointment. When those efforts proved unsuccessful, the defendant attempted to pick her up and carry her. A resisted, and a "tussle" ensued. Id., 288. After A fell to the ground, the defendant dragged her by her ankle down the hallway and through the main office. She continued to resist and protest. School personnel witnessing the incident called the police, attempted to assist A, and enacted a protocol to keep other students in their classrooms. When the police arrived, the defendant released A. The next day, the school psychologist and nurse spoke to A about the incident. They noticed bruising on her body and subsequently reported the incident to the Department of Children and Families.

Thereafter, the defendant was charged with one count each of breach of the peace in the second degree and risk of injury to a child. After being thoroughly canvassed by the trial court, the defendant chose to represent himself at trial, and the court appointed standby counsel in accordance with Practice Book § 44-4. Before trial, the state filed two motions in limine related to the minor child's privacy. The first motion sought to preclude the defendant from calling A as a witness, which the guardian ad litem supported on the basis that testifying would not be in A's best interest. The court declined to rule on the motion when it was filed, and the motion became moot when the state changed its position and called A to testify in its case-in-chief. The state's second motion requested that the court seal all references to information that would identify the minor child pursuant to General Statutes § 54-86e. The defendant did not oppose this motion, and the court granted it. For the remainder of the proceedings, the court struck from the record any statements identifying A by her full name and any references to the name

State *v.* Mark T.

of the mental health facility at which A was scheduled for treatment on the day of the incident.

At trial, the defendant raised the defense of parental justification under General Statutes (Rev. to 2015) § 53a-18 (1) (now § 53a-18 (a) (1)).[2] In support of this defense, the defendant attempted to elicit testimony from Wilkos about A's history of aggressive behavior at school. He also attempted to testify directly about A's aggressive behavior at home, his difficulty managing that behavior, and his efforts to obtain mental health treatment for her leading up to the incident. The prosecutor, however, repeatedly objected to this line of questioning, and the court sustained many of the objections. The jury ultimately found the defendant guilty of risk of injury to a child but not guilty of breach of the peace in the second degree. The trial court imposed a total effective sentence of four years imprisonment, execution suspended, with three years of probation.

The defendant appealed from the judgment of conviction to the Appellate Court, claiming, among other things, that the trial court violated his constitutional right to present a defense. Specifically, the defendant challenged (1) the trial court's evidentiary ruling limiting his cross-examination of Wilkos, and (2) the series of evidentiary rulings limiting his direct examination of himself. He asserted that the precluded testimony was admissible and crucial to his parental justification defense. The Appellate Court subsequently affirmed the judgment of the trial court. Id., 299. Specifically, the Appellate Court concluded that the trial court acted within its discretion to limit the defendant's cross-examination of Wilkos because his question about A's history of aggressive behavior was outside the scope of the prosecutor's prior examination. Id., 295. The Appellate

[2] Hereinafter, all references to § 53a-18 in this opinion are to the 2015 revision of the statute.

State *v.* Mark T.

Court also concluded that the trial court acted within its discretion to limit the defendant's direct examination of himself because the precluded testimony was not relevant and included information that was protected by the court's prior ruling on the state's second motion in limine related to A's privacy. Id., 298–99.

Thereafter, the defendant filed a petition for certification to appeal, which we granted, limited to the following issue: "Did the Appellate Court properly reject the defendant's claim that he is entitled to a new trial due to the trial court's rulings, in violation of his constitutional right to present the defense of parental justification, precluding certain testimony by the self-represented defendant and a key state's witness pertaining to that defense?" *State* v. *Mark T.*, 330 Conn. 962, 199 A.3d 561 (2019). Additional facts and procedural history will be set forth as necessary.

On appeal, the defendant contends that the trial court's evidentiary rulings prevented him from exploring relevant information about his daughter's history of aggressive behavior, the defendant's difficulty managing that behavior, and the urgency of her mental health appointment on the day of the incident. This information, the defendant asserts, was "critical to his [parental justification] defense." The state contends that the Appellate Court correctly concluded that the trial court acted within its discretion with regard to both challenged evidentiary rulings. Alternatively, the state asserts that any evidentiary error was harmless because, to the extent that A's history of aggressive behavior was relevant to the defendant's parental justification defense, there was sufficient evidence in the record to establish such history.

We begin with the legal principles governing the defendant's appeal. "A [criminal] defendant has a constitutional right to present a defense, but he is [nonethe-

State *v.* Mark T.

less] bound by the rules of evidence in presenting a defense. . . . Although exclusionary rules of evidence cannot be applied mechanistically to deprive a defendant of his rights, the constitution does not require that a defendant be permitted to present every piece of evidence he wishes. . . . Accordingly, [i]f the proffered evidence is not relevant [or is otherwise inadmissible], the defendant's right to [present a defense] is not affected, and the evidence was properly excluded.'' (Citation omitted; internal quotation marks omitted.) *State* v. *Bennett*, 324 Conn. 744, 760, 155 A.3d 188 (2017); see, e.g., *State* v. *Tutson*, 278 Conn. 715, 746–51, 899 A.2d 598 (2006) (no violation of constitutional right to present defense when trial court properly excluded evidence on hearsay grounds). Thus, "the question of the admissibility of the proffered evidence is one of evidentiary, but not constitutional, dimension.'' *State* v. *Shabazz*, 246 Conn. 746, 753 n.4, 719 A.2d 440 (1998), cert. denied, 525 U.S. 1179, 119 S. Ct. 1116, 143 L. Ed. 2d 111 (1999).

"It is axiomatic that [t]he trial court's ruling on the admissibility of evidence is entitled to great deference. . . . In this regard, the trial court is vested with wide discretion in determining the admissibility of evidence, including issues of relevance and the scope of cross-examination. . . . Accordingly, [t]he trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . In determining whether there has been an abuse of discretion, every reasonable presumption should be made in favor of the correctness of the trial court's ruling . . . .'' (Internal quotation marks omitted.) *State* v. *Calabrese*, 279 Conn. 393, 406–407, 902 A.2d 1044 (2006).

In addition, because the defendant was self-represented at trial, we are mindful that "[i]t is the established policy of the Connecticut courts to be solicitous of [self-

State *v.* Mark T.

represented] litigants and when it does not interfere
with the rights of other parties to construe the rules
of practice liberally in favor of the [self-represented]
party.'' (Internal quotation marks omitted.) *New Haven*
v. *Bonner*, 272 Conn. 489, 497–98, 863 A.2d 680 (2005).
Although ''the right of self-representation provides no
attendant license not to comply with relevant rules of
procedural and substantive law''; (internal quotation
marks omitted) *Oliphant* v. *Commissioner of Correc-
tion*, 274 Conn. 563, 570, 877 A.2d 761 (2005); we, never-
theless, ''give great latitude to [self-represented]
litigants in order that justice may both be done and be
seen to be done.''[3] (Internal quotation marks omitted.)
*Marlow* v. *Starkweather*, 113 Conn. App. 469, 473, 966
A.2d 770 (2009); see, e.g., *Travelers Property & Casu-
alty Co.* v. *Christie*, 99 Conn. App. 747, 757–58 n.10,
916 A.2d 114 (2007) (noting that, if abuse of discretion
standard was applicable, trial court abused discretion
when, among other things, it failed to ''apply the rules
of procedure liberally in favor of the [self-represented]
party, untrained in the law'').

I

We first address the defendant's claim that the trial
court improperly limited his cross-examination of
Wilkos, the state's key eyewitness. Specifically, the
defendant claims that the court improperly precluded
him from asking Wilkos, during cross-examination,
whether she had ever seen A become physical with

---

[3] The concurring and dissenting opinion observes many instances in which
the trial court was appropriately solicitous of the defendant; see footnote
8 of the concurring and dissenting opinion; and notes that the defendant
''was warned repeatedly about the dangers of self-representation . . . .''
Text accompanying footnote 7 of the concurring and dissenting opinion.
However, those instances when the trial court was appropriately solicitous
do not excuse the few occasions when the court abused its discretion
by excluding relevant and otherwise admissible evidence. Moreover, the
propriety of a criminal defendant's decision to represent himself at trial does
not alter an appellate court's analysis of that defendant's evidentiary claims.

State *v.* Mark T.

another person at school. The state asserts that the court properly sustained the prosecutor's objection to the defendant's question because it was beyond the scope of the prosecutor's prior examination, which was limited to rehabilitating Wilkos' credibility.

The following additional procedural history is relevant to resolution of this claim. On direct examination, the prosecutor questioned Wilkos comprehensively about the facts surrounding the incident. In addition, Wilkos testified that A was enrolled in the school's intensive behavior support program, which was "a self-contained, educational, therapeutic program for students with emotional disturbance and behavior difficulties." Thereafter, the defendant conducted his cross-examination, the prosecutor conducted her redirect examination, and the defendant conducted his second cross-examination. In the course of those examinations, both parties questioned Wilkos about the escalation of the incident and the accuracy of her recollection. During the prosecutor's second redirect examination, she questioned Wilkos about her thirteen years of experience in a school:

"Q: How many incidents have you seen of parents dragging children out of a school?

"A: This is the only one.

"Q: So, is it—so, what you testified to today, was that a pretty vivid recollection of the day in question?

"A: Yes, it's a vivid recollection. Some of the specifics of which arm went where, in what sequence, isn't . . . clear, but it's a very clear recollection of the dragging and the route, the grabbing the door, all that stuff."

The defendant's third cross-examination included the following exchange:

State *v.* Mark T.

"Q: Ms. Wilkos, was that the first time that [A] has gotten loud in your classroom?

"A: No.

"Q: Has [A] ever been physical with anybody else in the school?

"[The Prosecutor]: Objection, Your Honor; relevancy.

"The Court: All right, well, it's well outside the scope. So, I am going to sustain the objection to that."

The defendant contends that his question—"[h]as [A] ever been physical with anybody else in the school"— was not outside the scope of the prosecutor's second redirect examination[4] because "it was a direct response to the [prosecutor's] insinuation, through [her second] redirect examination, that no parent would reasonably handle their child in such a way." The state asserts that the Appellate Court correctly concluded that nothing elicited in the prosecutor's preceding examination pertained to A's past conduct at school. The state further contends that the prosecutor's motive during the preceding examination was to rehabilitate Wilkos after the defendant's cross-examinations elicited testimony that cast doubt on the credibility of her recollection.[5]

---

[4] We evaluate the propriety of the trial court's evidentiary ruling according to the basis on which it was sustained—namely, that the question was outside the scope of the prior examination. We briefly note, however, that the prosecutor actually objected to the defendant's question on relevance grounds. Because the defendant does not challenge this procedural irregularity—specifically, that the court sustained the prosecutor's objection on a different basis from the one asserted by the prosecutor—we have no occasion to address the propriety of this aspect of the ruling. See, e.g., *State* v. *Edwards*, 334 Conn. 688, 704, 224 A.3d 504 (2020) ("[i]t is incumbent on the parties, not the [trial] court, to properly articulate the present basis for an objection"); id. (trial court need not question whether party's failure to raise certain objection was "an inadvertent omission as opposed to an evolving strategy").

[5] In addition, the state asserts that the defendant's question was "aimed at smearing [A's] character." To the extent that this suggests that Wilkos' testimony in response to the defendant's question would have constituted inadmissible character evidence under § 4-4 (a) of the Connecticut Code of

State *v.* Mark T.

Section 6-8 (a) of the Connecticut Code of Evidence provides: "Cross-examination and subsequent examinations shall be limited to the subject matter of the preceding examination and matters affecting the credibility of the witness, except in the discretion of the court." Accord *State* v. *Ireland*, 218 Conn. 447, 452, 590 A.2d 106 (1991) ("[i]t is well settled that our rule restricts cross-examination to matters covered in the direct examination, except as they involve credibility alone" (internal quotation marks omitted)). "Generally, a party who delves into a particular subject during the examination of a witness cannot object if the opposing party later questions the witness on the same subject. . . . The party who initiates discussion on the issue is said to have 'opened the door' to rebuttal by the opposing party." (Citations omitted.) *State* v. *Graham*, 200 Conn. 9, 13, 509 A.2d 493 (1986). "Although cross-examination is limited to the subject matter of the direct examination . . . the cross-examiner may elicit not only any fact that would tend to contradict or to qualify any particular fact stated on direct examination, but also anything that would tend to modify any conclusion or inference resulting from the facts so stated." (Internal quotation marks omitted.) *State* v. *Alvarez*, 95 Conn. App. 539, 552, 897 A.2d 669, cert. denied, 279 Conn. 910, 902 A.2d 1069 (2006). This rule of evidence "recognizes the discretion afforded the trial judge in determining the scope of cross-examination," including the discretion to permit "a broader scope of inquiry in certain circumstances, such as when a witness could be substantially inconvenienced by having to testify on two different occasions." Conn. Code Evid. § 6-8 (a), commentary. "The [trial] court has wide discretion to determine the scope of cross-examination. . . . Every reasonable presumption should be given in favor of the correctness

---

Evidence, we are not persuaded. The prosecutor did not object on that basis; nor did the trial court rule on that basis.

State *v.* Mark T.

of the court's ruling in determining whether there has been an abuse of discretion.'' (Citations omitted; internal quotation marks omitted.) *State* v. *Hernandez*, 224 Conn. 196, 208, 618 A.2d 494 (1992).

The defendant's claim turns on the scope of the ''subject matter of the preceding examination''; Conn. Code Evid. § 6-8 (a); which was the prosecutor's second redirect examination of Wilkos. Specifically, the prosecutor asked Wilkos two pertinent questions. First, the prosecutor asked, in Wilkos' thirteen years of experience, ''[h]ow many incidents have you seen of parents dragging children out of a school?'' After Wilkos replied that this was the only such incident, the prosecutor asked: ''So, is it—so, what you testified to today, was that a pretty vivid recollection of the day in question?'' Wilkos then replied: ''Yes . . . .''

The point of disagreement between the state and the defendant is how they characterize the prosecutor's preceding examination. The state characterizes the scope of the examination according to the combined effect of both questions, whereas the defendant characterizes the scope of the examination according to the first question, standing alone. Specifically, the state asserts that the prosecutor's examination was limited to rehabilitating Wilkos after the defendant's cross-examination elicited testimony that cast doubt on the accuracy of her recollection. According to the state's characterization of the record, the two relevant questions, *read together*, serve only to rehabilitate Wilkos by reasonably raising an inference in the minds of the jurors that the incident was unique and, therefore, memorable. By contrast, the defendant asserts that the prosecutor's first question about similar conduct by other parents—*standing alone*, without any assumption regarding its purpose—insinuates that, because no parent *has* handled their child that way, no reasonable parent *would* handle their child that way. According to the

State *v.* Mark T.

defendant's characterization of the record, his question about A's history of physical aggression at school would rebut the inference that his conduct was unreasonable by establishing that "no parent has had to deal with a child like his, who necessitates the use of physical force," and that "school officials . . . themselves had to [use reasonable force to restrain A] on prior occasions." In other words, the defendant maintains that the prosecutor's first question carried an adverse inference about the reasonableness of his conduct, which "opened the door" to the defendant's rebuttal on subsequent cross-examination.

We find the state's argument equally as plausible as the defendant's argument. The trial court could reasonably have defined the scope of the prosecutor's preceding examination in light of the prosecutor's second question about the strength of Wilkos' recollection, which establishes that the scope of the examination was limited to rehabilitation. The defendant's question about A's history of physical aggression would not have cast further doubt on the strength of Wilkos' recollection or otherwise rebutted the inference that the incident was memorable. Consequently, the trial court's ruling that the defendant's question was outside the scope of Wilkos' credibility did not constitute an abuse of discretion. See *State* v. *Moore*, 293 Conn. 781, 790, 981 A.2d 1030 (2009), cert. denied, 560 U.S. 954, 130 S. Ct. 3386, 177 L. Ed. 2d 306 (2010); *State* v. *Calabrese*, supra, 279 Conn. 407. Based on the record in this case, it was reasonable for the court to conclude that the prosecutor's examination was limited to Wilkos' credibility and did not "open the door" to the defendant's question about the reasonableness of his conduct. Therefore, we cannot conclude that the court's ruling constituted a manifest abuse of discretion. Accordingly, we conclude that the Appellate Court correctly deter-

339 Conn. 225 NOVEMBER, 2021 239

State *v.* Mark T.

mined that it was not an abuse of discretion for the trial court to exclude the defendant's question.

II

We now consider the defendant's claim that the trial court improperly limited his direct examination of himself. Specifically, the defendant contends that, "[b]efore [he] could begin to testify about why he felt it was reasonable and necessary to restrain his daughter," A, the court sustained the prosecutor's relevance objections, which "forced [the defendant] to stop any questioning related to his daughter's severe behavioral issues and history of physical combativeness." The following testimony from the defendant's direct examination of himself[6] and the subsequent exchange between the prosecutor, the court, and the defendant, are relevant to the resolution of this claim:

"Q: Mr. [T.], how long have you had custody of your daughter before the incident occurred?

"A: Well, I had custody of my daughter for less than [one] month.

"Q: Okay, Mr. [T.] What happened in that amount of time? How was you and your daughter's relationship?

"A: Well, when I got custody of my daughter, she had ran away every night—

"[The Prosecutor]: Objection, Your Honor.

"The Court: Well, sustained.

"[The Defendant]: Okay, on what basis is the objection?

"The Court: [Prosecutor?]

---

[6] For convenience and clarity, in part II of this opinion, we use the Q and A (question and answer) format only when the defendant questions himself during his direct examination.

State *v.* Mark T.

"[The Prosecutor]: Relevance, Your Honor.

"The Court: Without getting into too much detail.

"[The Defendant]: Okay.

"The Court: We'll permit a certain amount, but I am going to ask you to stay away from certain things.

"[The Defendant]: I just want to, like—I want to show the urgency in my getting [A] the help that she needed.

"The Court: That's fine. You can state that without getting into a lot of underlying detail.

"[The Defendant]: Okay."

The defendant then testified, over the prosecutor's continued objections, that he "was in desperate search for help" for A "because every day the police were coming to [his] house," that he did not want A to "go into the foster care system," and that he did not receive help from the department, as promised. The defendant then continued his direct examination of himself:

"Q: So, Mr. [T.], what did you [do] to get your daughter help?

"[The Prosecutor]: Objection, Your Honor; relevancy to the case at hand.

"The Court: Well, I'll allow a limited amount of this.

"[The Defendant]: Okay, so, this isn't really allowed.

"Q: So, Mr. [T.], at almost the end of that month that you had your daughter, what happened that she was taken away from you again?

"A: Well, I needed help with her, and I made an appointment to get her the help that she needed, which was—

"[The Prosecutor]: Objection, Your Honor.

"The Court: Sustained.

"[The Defendant]: Okay. The help that she needed, which was not just some after-school program; it was much more significant.

"[The Prosecutor]: Objection, Your Honor.

"[The Defendant]: Okay.

"The Court: I'll allow that answer to stand."

On appeal, the defendant argues that the trial court prevented him from testifying further about "his daughter's severe behavioral issues and history of physical combativeness." He contends that this excluded testimony was relevant to his parental justification defense, which contains both objective and subjective elements of reasonableness. The state disagrees for two reasons. First, it contends that the court "did not completely preclude this line of inquiry" but merely limited it. Second, the state asserts that the court reasonably could have concluded that the defendant intended to testify about protected information, such as the name of the mental health facility, which the court had sealed prior to trial.

Section 4-1 of the Connecticut Code of Evidence provides: "Relevant evidence means evidence having any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence." (Internal quotation marks omitted.) This concept embodies two components: (1) probative value, and (2) materiality. Conn. Code Evid. § 4-1, commentary; see also *State* v. *Jeffrey*, 220 Conn. 698, 709, 601 A.2d 993 (1991), cert. denied, 505 U.S. 1224, 112 S. Ct. 3041, 120 L. Ed. 2d 909 (1992). Regarding probative value, "[o]ne fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. . . . Evidence is not

State *v.* Mark T.

rendered inadmissible because it is not conclusive. All that is required is that the evidence tend to support a relevant fact even to a slight degree, so long as it is not prejudicial or merely cumulative.'' (Internal quotation marks omitted.) *State* v. *Kalil*, 314 Conn. 529, 540, 107 A.3d 343 (2014). Regarding the second component, ''[t]he materiality of evidence turns [on] what is at issue in the case, which generally will be determined by the pleadings and the applicable substantive law.'' Conn. Code Evid. § 4-1, commentary; see also *State* v. *Wynne*, 182 Conn. App. 706, 721, 190 A.3d 955, cert. denied, 330 Conn. 911, 193 A.3d 50 (2018). ''The degree to which any evidence is material and relevant must be assessed in light of the fact or issue that it was intended to prove.'' *State* v. *Geyer*, 194 Conn. 1, 7, 480 A.2d 489 (1984).

An examination of the parental justification defense, asserted by the defendant in this case, informs our consideration of whether the excluded evidence was relevant. General Statutes (Rev. to 2015) § 53a-18 provides in relevant part: ''The use of physical force upon another person which would otherwise constitute an offense is justifiable and not criminal under any of the following circumstances:

''(1) A parent, guardian or other person entrusted with the care and supervision of a minor . . . *may use reasonable physical force upon such minor . . . when and to the extent that he reasonably believes such to be necessary* to maintain discipline or *to promote the welfare of such minor* . . . .'' (Emphasis added.) This defense ''provides that such force is not criminal, as long as it is reasonable . . . .'' *State* v. *Nathan J.*, 294 Conn. 243, 260, 982 A.2d 1067 (2009). If, however, ''the force is unreasonable . . . the parental justification [defense] does not apply . . . .'' Id. The defense therefore ''requires juries to distinguish . . . between reasonable and unreasonable force.'' Id. Moreover, ''the defense of parental justification requires both subjec-

State *v.* Mark T.

tive and objective reasonableness on behalf of the parent or guardian with respect to the use of physical force.''[7] *State* v. *Mark T.*, supra, 186 Conn. App. 296–97.

We have held that "the parental justification defense may apply to a charge of risk of injury to a child . . . .'' *State* v. *Nathan J.*, supra, 294 Conn. 260. The defendant, in the present case, was convicted of such a charge. Once a defendant meets the initial burden of producing sufficient evidence to warrant submitting the parental justification defense to the jury, the state bears the burden of disproving the defense beyond a reasonable doubt. Id., 261–62. "Significantly, the ultimate determination of whether the particular conduct of a parent is reasonable, and thus entitled to the protection of § 53a-18 (1), *is a factual determination to be made by the trier of fact.*'' (Emphasis added; internal quotation marks omitted.) *Dubinsky* v. *Black*, 185 Conn. App. 53, 68, 196 A.3d 870 (2018); see also *State* v. *Brocuglio*, 56 Conn. App. 514, 518, 744 A.2d 448 ("whether the limit of 'reasonable' physical force [under § 53a-18 (1)] has been reached in any particular case is a factual determination to be made by the trier of fact''), cert. denied, 252 Conn. 950, 748 A.2d 874 (2000).

Throughout the pertinent exchange during the defendant's direct examination of himself, he was specifically precluded from fully testifying that his daughter ran away from home every night; testifying in any detail about the urgency with which he sought help for her or the reasons for such urgency; answering the question,

_____

[7] We evaluate the trial court's evidentiary rulings pertaining to the defendant's parental justification defense as that defense was articulated in § 53a-18 (1) and *State* v. *Nathan J.*, supra, 294 Conn. 260. Specifically, in this case, the parental justification defense required, first, that the defendant subjectively believed that his actions were necessary to promote A's welfare and, second, that his belief was objectively reasonable. Contrary to the concurring and dissenting opinion's suggestion, nothing about this analysis injects a reasonableness requirement into the subjective component of the defense. See footnote 5 of the concurring and dissenting opinion.

State *v.* Mark T.

"[s]o, Mr. [T.], what did you [do] to get your daughter help"; and testifying in any detail about the type of professional help he sought for her, particularly the appointment to which he was taking A on the day of the incident. All of this precluded testimony directly concerned A's behavioral problems outside of school.

This testimony was highly relevant to the defendant's parental justification defense. First, the excluded testimony would have supplied probative facts. Specifically, the facts concerning A's history of aggressive behavior would have rendered the urgency of the defendant's need to get help for her either more or less probable, depending on the jury's assessment of the defendant's credibility. The intensity of that urgency would have, in turn, supported the time sensitive nature of A's departure from school on the day of the incident. "Evidence is not rendered inadmissible because it is not conclusive. All that is required is that the evidence tend to support a relevant fact even to a slight degree, so long as it is not prejudicial or merely cumulative." (Internal quotation marks omitted.) *State* v. *Kalil*, supra, 314 Conn. 540.

Second, those probative facts supported by the precluded testimony were material to the subjective and objective reasonableness of the defendant's use of physical force. The nature and severity of the defendant's difficulty parenting his daughter were material to the strength of his subjective belief that his use of force was reasonable to get A to her mental health appointment. Similarly, the nature and severity of A's behavioral problems were material to the degree to which a reasonable parent in the defendant's position would agree that his use of force was reasonable under the circumstances. The parental justification defense turns on reasonableness; therefore, the defendant's inability to testify about facts that were material to the reasonableness of his

State *v.* Mark T.

actions significantly hampered his ability to demonstrate his defense.

Additionally, as we have recognized across a myriad of legal contexts, reasonableness is an inherently fact driven inquiry into the specific circumstances of the case. Therefore, evidence concerning reasonableness tends toward admissibility to better aid the trier of fact. See, e.g., *Hall* v. *Burns*, 213 Conn. 446, 474, 569 A.2d 10 (1990) ("in order for the jury to determine whether [the defendant exercised the duty of reasonable care], it is only fair that the jury be made aware of all of the circumstances surrounding [the applicable statutory standard]"). In the context of the parental justification defense, § 53a-18 (1) and the common-law doctrine preceding it "recognize that any analysis of reasonableness *must consider a variety of factors* and that such an inquiry is case specific." (Emphasis added.) *State* v. *Nathan J.*, supra, 294 Conn. 256.

In sum, the precluded testimony would have tended to make certain important facts either more or less probable, including A's behavioral problems and history of violence, the urgency of the defendant's need to get help for her, and the time sensitive nature of A's departure from school. Those facts were material to the reasonableness of the defendant's use of physical force, which was the core of his defense. Finally, the jury's evaluation of reasonableness inherently required a comprehensive assessment of the surrounding facts and circumstances.

The state, however, contends that the trial court did not abuse its discretion when it precluded the testimony for two reasons. First, the state argues that the court's evidentiary rulings were proper because the court did not completely preclude the defendant from establishing A's history of aggression and behavioral problems to the jury. Rather, the state contends, the court "per-

State *v.* Mark T.

mitted the defendant ample leeway to testify about these issues and establish other facts [about A's aggressive behavior],'' which the defendant did.[8] In other words, according to the state, other testimony ''made it abundantly clear that the defendant struggled'' to control A's aggressive behavior.

We are not persuaded. The state's argument does not address whether the precluded testimony was *irrelevant*—i.e., whether the precluded testimony was immaterial or had low probative value. Rather, the state's argument is that the trial court permitted the defendant to otherwise establish A's behavioral problems, which suggests that the precluded testimony would have been cumulative. Section 4-3 of the Connecticut Code of Evidence permits a trial court to exclude evidence that is relevant ''if its probative value is outweighed by the danger of . . . needless presentation of cumulative evidence.'' See, e.g., *State* v. *Little*, 138 Conn. App. 106, 123, 50 A.3d 360 (''[r]elevant cumulative evidence is properly excluded when, in the court's exercise of discretion, it is unfairly cumulative and, thus, is more prejudicial than probative''), cert. denied, 307 Conn. 935, 56 A.3d 713 (2012). Although related to relevance, the exclusion of cumulative evidence targets prejudicial overemphasis and inefficient judicial proceedings. These considerations are distinct from relevance, which operates to exclude evidence that will not meaningfully aid the trier of fact and evidence that is otherwise peripheral to the case. The state's argument that the

_____

[8] The state further contends that the trial court's limitations on the defendant's testimony about A's behavioral problems prevented the trial from ''devolv[ing] into a minitrial about [A's] general character.'' To the extent that this repeats the state's earlier suggestion that the disputed testimony would have constituted inadmissible character evidence under § 4-4 (a) of the Connecticut Code of Evidence, we are not persuaded. Again, the prosecutor did not object on that basis; nor did the trial court rule on that basis. See footnote 5 of this opinion.

State *v.* Mark T.

precluded testimony was not relevant because it was cumulative conflates these considerations.

In addition, the precluded testimony was highly probative because it concerned the factual context that might have justified, both subjectively and objectively, the defendant's actions. The state does not explain how any prejudicial effect would have outweighed this high probative value such as to render the testimony cumulative. Moreover, and most noteworthy, the state never asserted to the trial court that the prosecutor's objection was based on cumulative evidence, and the court did not sustain it on that basis. See, e.g., *State* v. *Edwards*, 334 Conn. 688, 703, 224 A.3d 504 (2020) ("[a] party cannot present a case to the trial court on one theory and then seek appellate relief on a different one" (internal quotation marks omitted)).

Second, the state argues that the trial court's evidentiary rulings were proper because the court reasonably could have concluded that the defendant's testimony would have revealed protected information. As discussed previously in this opinion, before trial, the state filed a motion to seal all references to information that would identify A. The defendant did not oppose the motion, and the court granted it and proceeded to strike any identifying statements from the record. The state contends that the court reasonably could have concluded that the defendant, in his direct examination of himself at trial, intended to testify about the mental health facility and other details of A's treatment. Because the court had sealed that information before trial, the state argues, the court acted within its discretion to preclude the defendant from testifying about it.

Again, we are not persuaded. As an initial matter, the prosecutor did not base her objections on the prior motion in limine or the minor's privacy. At trial, the prosecutor expressly articulated that the basis of her

State *v.* Mark T.

objections was relevance. The record does not demonstrate that the prosecutor's objections were based on an apprehension that the defendant's testimony would implicate protected information, rather than relevance, as asserted at trial. Likewise, the record does not demonstrate that the court sustained the prosecutor's objections on the basis of protecting the minor's privacy, rather than the prosecutor's articulated basis of relevance. Because the prosecutor's articulated basis for her objections was relevance, not protecting A's privacy, and because the court did not articulate any different basis for sustaining those objections, we are not persuaded that the trial court's ruling on the motion in limine supported its subsequent evidentiary rulings.

Moreover, the state's assertion on appeal—that the precluded testimony was otherwise inadmissible because it was protected by the trial court's ruling on the second motion in limine regarding A's privacy—does not address whether the testimony was relevant. As explained, a relevance objection concerns the probative value of the disputed testimony and its centrality to the material issues in the case. This limitation on the admissibility of evidence is distinct from the considerations that underlie a person's privacy interest and the mechanism to seal the record in protection of that privacy interest. The state's argument that the testimony was not relevant because it was rendered otherwise inadmissible by the court's prior ruling regarding A's privacy conflates these considerations. In other words, the state's argument on appeal does not squarely address the basis on which the prosecutor objected, namely, that the precluded testimony was irrelevant.

Even if the trial court had sustained the prosecutor's objections based on its prior ruling on the state's second motion in limine regarding A's privacy, we are not persuaded that the motion in limine would have supported the full scope of the court's subsequent evidentiary

State *v.* Mark T.

rulings. With the exception of A's full name and the name of the facility where she was to receive treatment, the motion did not specifically challenge the admission of any substantive evidence related to A's history of aggression or behavioral problems. Testimony concerning the defendant's observations of his daughter's behavior at home, the nature of their relationship, his unsuccessful attempts at parental discipline, and the fact that the appointment concerned A's mental health would not have implicated the state's pretrial motion in limine. The motion was limited in scope to protect information through which A could be identified, specifically, her full name and the name of the treatment facility.[9] Stated differently, even if the trial court had concluded that the defendant's testimony would have revealed the name of the mental health facility, the scope of its evidentiary rulings would have been too broad because the court excluded otherwise relevant and admissible testimony that was not encompassed by its order granting the state's pretrial motion in limine.[10]

_____

[9] In addition, the state argues that "the trial court did not actually preclude *anything*" concerning the defendant's testimony about A's mental health appointment because the sustained objection "did not deter the defendant from describing the type of appointment he set up." (Emphasis in original.) Specifically, the defendant testified: "Well, I needed help with her, and I made an appointment to get her the help that she needed, which was—"

At that point, the prosecutor objected, and the court sustained the objection. The defendant then continued: "Okay. The help that she needed, which was not just some after-school program; it was much more significant." The prosecutor renewed her objection, but the court overruled it. The state now argues that the defendant essentially disregarded the court's ruling sustaining the prosecutor's first objection, and, therefore, no testimony was actually excluded. We disagree. The defendant's rhetorical choice to resume his testimony in the same clause where it had been cut off does not establish that his substantive description of the appointment was unaffected by the trial court's ruling.

[10] The concurring and dissenting opinion raises two privacy related bases for the state's motion in limine which, it contends, reasonably could have supported the trial court's subsequent evidentiary rulings. First, the concurring and dissenting opinion posits that the court reasonably could have concluded that A had a generalized, freestanding privacy interest in "not having additional details of her behavioral problems and proposed treatment

State *v.* Mark T.

Accordingly, we conclude that the trial court abused its discretion by precluding the defendant's testimony about A's ongoing aggression, the defendant's struggle with managing her behavior, and the measures the defendant had taken to care for her urgent mental health difficulties.

Having concluded that it was an abuse of discretion for the trial court to preclude this testimony, we must now determine whether that error was harmful. The defendant contends that the court's evidentiary rulings were harmful because the jury effectively "heard one side of this story because the defendant could not intro-

published in court . . . ." However, as with the state's argument, we disagree with the concurring and dissenting opinion's characterization of the scope of the state's second motion in limine, which sought to exclude only information through which A could be identified. The court's order granting this motion was too narrow in scope to support such a broad privacy interest. Moreover, the defendant's testimony would not have implicated any such privacy interest because all statements identifying A or the treatment facility were kept under seal or struck from the record.

Second, the concurring and dissenting opinion asserts that the trial court reasonably could have concluded that the defendant's testimony would have "reveal[ed] the content of confidential medical records," such as A's diagnosis and the identity of her treatment provider. Footnote 4 of the concurring and dissenting opinion. However, the record does not indicate that the guardian ad litem ever asserted A's privacy interest to specifically exclude testimony about her medical records, which is particularly significant given that the state's motions in limine were too limited in scope to support such a privacy interest. Moreover, in *State* v. *White*, 139 Conn. App. 430, 55 A.3d 818 (2012), cert. denied, 307 Conn. 953, 58 A.3d 975 (2013), on which the concurring and dissenting opinion relies; see footnote 4 of the concurring and dissenting opinion; the Appellate Court upheld the trial court's exclusion of medical records only after weighing the interest in the confidentiality of the records against their probative value. See *State* v. *White*, supra, 440. Contrary to the concurring and dissenting opinion's assertion, the precluded testimony in this case had very high probative value. Most important, even if we assume that the defendant's testimony would have included some medical information, the record does not indicate that it would have been so limited. For example, testimony concerning the defendant's observations of A's behavior, the nature of their relationship, his unsuccessful parental discipline, and the detail that the appointment concerned A's mental health and combative behavior—none of this testimony would have disclosed the content of any confidential medical record.

State *v.* Mark T.

duce crucial evidence of why his actions were justified.''
Without this evidence, he argues, the jury was left with
no basis to believe that the defendant's conduct could
be subjectively or objectively reasonable. The state con-
tends that the evidentiary rulings were harmless
because the defendant's general testimony about his
parenting difficulties, ''in combination with [Wilkos']
undisputed [testimony] that [A] was in a special educa-
tion program for children with behavioral issues, ren-
dered cumulative any further detail about'' A's behavior.

''The law governing harmless error for nonconstitu-
tional evidentiary claims is well settled. When an
improper evidentiary ruling is not constitutional in
nature, the defendant bears the burden of demonstra-
ting that the error was harmful. . . . [W]hether [an
improper ruling] is harmless in a particular case
depends [on] a number of factors, such as the impor-
tance of the witness' testimony in the [defendant's] case,
whether the testimony was cumulative, the presence
or absence of evidence corroborating or contradicting
the testimony of the witness on material points, the
extent of cross-examination otherwise permitted, and,
of course, the overall strength of the prosecution's case.
. . . Most importantly, we must examine the impact of
the . . . evidence on the trier of fact and the result of
the trial. . . . [T]he proper standard for determining
whether an erroneous evidentiary ruling is harmless
should be whether the jury's verdict was substantially
swayed by the error. . . . Accordingly, a nonconstitu-
tional error is harmless when an appellate court has a
fair assurance that the error did not substantially affect
the verdict.'' (Internal quotation marks omitted.) *State*
v. *Fernando V.*, 331 Conn. 201, 215, 202 A.3d 350 (2019).

The defendant's parental justification defense, on
which he entirely relied, turned on the reasonableness
of his actions, both subjectively and objectively. There
can be no doubt that testimony concerning his difficulty

with his daughter's behavioral problems and the nature of the treatment he sought for her on the day of the incident would have been crucial to that defense. The reasonableness of a parent's conduct to restrain their child is defined, at least in part, by the child's actions necessitating such restraint. Specifically, it was the responsibility of the jury, as the finder of fact, to determine the defendant's subjective intent—for example, whether the defendant's conduct was the result of his assessment of A's recalcitrance or her history of violent behavior. But the jury's full and fair evaluation of the defendant's subjective belief that his actions were necessary to promote A's welfare was likely substantially impaired by the defendant's inability to testify regarding the specific circumstances that led to A's mental health appointment. It was also the responsibility of the jury to examine the objective reasonableness of the defendant's conduct in response to both A's recalcitrance and her history of aggression. But the jury's ability to ascertain the objective reasonableness of the defendant's actions was similarly hampered because it could not extrapolate what a reasonable parent would have done in the defendant's position without fully comprehending the defendant's position.

The state contends that any error was harmless because the precluded testimony would have been rendered cumulative by other, admitted testimony. Specifically, the state notes that there was sufficient, admitted testimony to establish A's behavioral problems to the jury, including the defendant's general testimony about his parenting difficulties; his request for assistance from the department; his fear that his daughter would be placed in foster care; and Wilkos' testimony that A was in a school program for students with behavioral problems.

We disagree. The precluded testimony would not have been cumulative because virtually no specific details

State *v.* Mark T.

about the nature of A's behavior in her interactions with the defendant were admitted as evidence. The jury's determination of whether the defendant's actions were justifiable under the circumstances necessarily needed to be informed by the specific details of A's situation, not just generalized and oblique references to her behavioral issues. See, e.g., *State* v. *Nathan J.*, supra, 294 Conn. 256 ("any analysis of reasonableness [under the parental justification defense] *must consider a variety of factors* and . . . [the] inquiry is *case specific*" (emphasis added)).

For example, the admitted evidence about A's placement in the school program and the defendant's interactions with the department would not have rendered further evidence about A's behavior cumulative because this evidence contained no details establishing the *nature and degree* of both her participation in the school program and the defendant's interactions with the department. Moreover, that evidence was limited to the context of state institutions, which would not have rendered cumulative the precluded evidence about the defendant's difficulty managing A's behavior at home. Likewise, testimony by the defendant about the nature of the appointment would not have been cumulative because the only admitted testimony was that it was, in A's words, "outpatient"; in Wilkos' words, "an appointment for something [A] want[ed] to do; it was for an after-school program"; and, in the defendant's words, "much more significant" than an after-school program. These characterizations were too general to render further testimony about the specific nature of the appointment cumulative.

The concurring and dissenting opinion asserts that "[n]othing in the record . . . supports a conclusion that [A] was in imminent danger of serious harm such that it would have been detrimental to her welfare to postpone treatment until such time as [she] could be

State *v.* Mark T.

. . . persuaded to go to treatment . . . .'' That is precisely the problem: the defendant was *precluded* from testifying about the nature and extent of any ongoing harm to his daughter's welfare associated with her behavioral problems. In the absence of such testimony, the defendant could not demonstrate *why*—why his need for help was so urgent; why he reached out to the department for aid; why the police were coming to his house every night; or why his fear that A would be placed in foster care was so acute. Consequently, the jury could not fully and fairly determine the subjective and objective reasonableness of the defendant's actions. This deficiency is particularly harmful given that the subjective and objective reasonableness of the defendant's actions was not collateral or peripheral to the case but, rather, the core of his parental justification defense. Accordingly, we cannot conclude, with a fair assurance, that the error did not substantially affect the verdict.[11] We therefore conclude that the evidentiary error was harmful, and the defendant is entitled to a new trial.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to

[11] The concurring and dissenting opinion notes that the defendant did not make an offer of proof regarding his direct examination of himself. It is true that "the right of self-representation provides no attendant license not to comply with relevant rules of procedural and substantive law." (Internal quotation marks omitted.) *Oliphant* v. *Commissioner of Correction*, supra, 274 Conn. 570. However, this is a quintessential example of a situation in which our courts ought to be solicitous of self-represented defendants. It would not have interfered with any right of the state for the court to allow the defendant a moment outside the presence of the jury to fully develop his direct examination of himself and to create a record adequate for appellate review. In addition, the totality of the record in this case fairly apprised the trial court and the state about the type of testimony the defendant sought to offer—including, at the very least, A's aggressive behavior and the defendant's difficulty managing that behavior. Even without the specific words the defendant would have spoken at trial, we cannot conclude that we have a fair assurance that the jury's verdict was not substantially swayed given that the testimony would have been central to his defense.

State *v.* Mark T.

reverse the judgment of the trial court and to remand the case to that court for a new trial.

In this opinion PALMER, D'AURIA and ECKER, Js., concurred.

KAHN, J., with whom ROBINSON, C. J., and MULLINS, J., join, concurring in part and dissenting in part. The majority concludes that the defendant, Mark T., is entitled to a new trial because the trial court improperly precluded him from testifying about his thirteen year old daughter's behavioral issues and the treatment program to which he was attempting to take her when he dragged her by her ankle through the corridors of her school, thereby causing her injury. According to the majority, it is impossible to "conclude, with a fair assurance, that the [exclusion of the defendant's testimony] did not substantially affect the verdict." Specifically, it concludes that the jury reasonably could have concluded that details of the victim's alleged behavior and the specific nature of the treatment that the defendant had arranged for her—which details he did not describe before the trial court or on appeal—might have caused him to have urgent concerns about the victim that, in turn, might have led him subjectively and reasonably to believe that his conduct was necessary to promote her welfare. I disagree.[1] I would conclude that the trial court correctly determined that the very slight probative value of the defendant's testimony on these issues was outweighed by the victim's privacy interests. Moreover, even if I were to agree that the exclusion of the testimony constituted an abuse of discretion, the defendant cannot establish that any impropriety was harmful because he did not make an offer of proof at trial as

[1] I agree with the majority's conclusion that the trial court properly precluded the defendant from questioning the victim's special education teacher, Monika Wilkos, as to whether the victim had "ever been physical with anybody else in the school . . . ."

State *v.* Mark T.

to the testimony that he would have given if the trial court had allowed it; nor has he explained on appeal what that testimony would have been. Accordingly, I respectfully dissent in part.

Although the majority opinion accurately sets forth the facts and procedural history of this case, I would emphasize the following facts that have particular relevance to the issues before us on appeal. The victim's teacher, Monika Wilkos, testified at trial that the victim was enrolled in an "intensive behavior support program. So any student that is placed in that program has a history of just—it's not always disruptive, but behavioral issues that's keeping them from making progress in school. So it's a program designed to support students and teach coping skills, as well as academics; there's a whole therapeutic component to it. So, any student that would come to my classroom would, in my experience, would have incidents where they were yelling or upset about something during the school day."

Wilkos also testified that, when she informed the victim that the defendant had come to the school to take her to the treatment program, the victim became very upset and repeatedly yelled, "I'm not going . . . ." When the defendant arrived and tried to persuade her to go, the victim repeatedly screamed at him, "I'm not fucking going with you, you can't make me go . . . ." When the defendant attempted to take hold of the victim's arms from behind, she dropped to the floor and onto her back. At that point, the defendant grabbed her by her ankle and started dragging her.

Wilkos further testified that, while the defendant was dragging the victim through the corridors of the school by her ankle, she continued to struggle violently and to scream hysterically. Wilkos crouched over the victim and tried to find a way to help her get to her feet because she could see that the victim was being hurt. When the

State *v.* Mark T.

victim attempted to stop the defendant's progress by grabbing onto door frames, bookcases and chairs, the defendant forcefully pried and yanked her hands off of them. A sixth grade student who witnessed the incident was terrified and crying. Because of the disturbance, school personnel called a "code yellow," meaning that students were instructed that they were not allowed to leave their classrooms.

With this background in mind, I begin with a review of the legal principles governing the defendant's claim. General Statutes (Rev. to 2015) § 53a-18 provides in relevant part: "The use of physical force upon another person which would otherwise constitute an offense is justifiable and not criminal under any of the following circumstances:

"(1) A parent, guardian or other person entrusted with the care and supervision of a minor . . . may use reasonable physical force upon such minor . . . when and to the extent that he reasonably believes such to be necessary to maintain discipline or to promote the welfare of such minor . . . ."

The trial court properly instructed the jury that, under this statute, it must find that the defendant did not act with parental justification if it found "any of the following: (1) The state has proved beyond a reasonable doubt that when the defendant used physical force, he did not actually believe that physical force was necessary to maintain discipline or to promote the welfare of the minor; (2) the state has proved beyond a reasonable doubt that the defendant's actual belief concerning the use of physical force was unreasonable, in the sense that a reasonable person, viewing all the circumstances from the defendant's point of view, would have not shared that belief; or (3) the state has proved beyond a reasonable doubt that, when the defendant used physical force to maintain discipline or to promote the wel-

State *v.* Mark T.

fare of the minor, he did not actually believe that the degree of force he used was necessary for the purpose; here again, as with the first requirement, an actual belief is an honest, sincere belief; or (4) the state has proved beyond a reasonable doubt that, if the defendant did actually believe that the degree of force he used to maintain discipline or to promote the welfare of the minor was necessary for that purpose, that belief was unreasonable, in the sense that a reasonable person, viewing all the circumstances from the defendant's point of view, would not have shared that belief.''

''A defendant has a constitutional right to present a defense, but he is [nonetheless] bound by the rules of evidence in presenting a defense. . . . Although exclusionary rules of evidence cannot be applied mechanistically to deprive a defendant of his rights, the constitution does not require that a defendant be permitted to present every piece of evidence he wishes. . . . *State* v. *Andrews*, 313 Conn. 266, 275, 96 A.3d 1199 (2014). Accordingly, [i]f the proffered evidence is not relevant [or is otherwise inadmissible], the defendant's right to [present a defense] is not affected, and the evidence was properly excluded. . . . *State* v. *Devalda*, 306 Conn. 494, 516, 50 A.3d 882 (2012); see also *State* v. *Hedge*, 297 Conn. 621, 634–36, 1 A.3d 1051 (2010) (defendant has constitutional right to introduce evidence of third-party culpability if it is relevant and directly connects third party to crime); *State* v. *Tutson*, 278 Conn. 715, 746–51, 899 A.2d 598 (2006) (no violation of constitutional right to present defense when trial court properly excluded evidence on hearsay grounds).'' (Internal quotation marks omitted.) *State* v. *Bennett*, 324 Conn. 744, 760–61, 155 A.3d 188 (2017). Thus, ''the question of the admissibility of the proffered evidence is one of evidentiary, but not constitutional, dimension.'' *State* v. *Shabazz*, 246 Conn. 746, 753 n.4, 719 A.2d 440

State *v.* Mark T.

(1998), cert. denied, 525 U.S. 1179, 119 S. Ct. 1116, 143
L. Ed. 2d 111 (1999).

"The trial court's ruling on the admissibility of evi-
dence is entitled to great deference. . . . [T]he trial
court has broad discretion in ruling on the admissibility
. . . of evidence. . . . The trial court's ruling on evi-
dentiary matters will be overturned only upon a show-
ing of a clear abuse of the court's discretion. . . . We
will make every reasonable presumption in favor of
upholding the trial court's ruling, and only upset it for
a manifest abuse of discretion. . . . Moreover, eviden-
tiary rulings will be overturned on appeal only where
there was an abuse of discretion and a showing by the
defendant of substantial prejudice or injustice." (Inter-
nal quotation marks omitted.) *State* v. *Colon*, 272 Conn.
106, 180, 864 A.2d 666 (2004), cert. denied, 546 U.S. 848,
126 S. Ct. 102, 163 L. Ed. 2d 116 (2005).

I begin my analysis with a review of the trial court's
actual rulings. Although the court sustained the prose-
cutor's objection to the defendant's testimony that, after
he obtained custody of his daughter, she ran away every
night, the court immediately clarified that the defendant
could testify about the victim's difficult behaviors
"[w]ithout getting into too much detail." With respect to
the prosecutor's objection to the defendant's testimony
that he had reached out to the Department of Children
and Families for help on many occasions, the defendant
abandoned that topic without waiting for any ruling on
the objection by the trial court. The court then overruled
the prosecutor's objections to the defendant's testi-
mony that he was desperate to get help for the victim
because the police were coming to his house every day
and that he was determined not to let the victim enter
the foster care system, in which he had been raised.
The court also allowed the defendant to testify that the
people that he turned to for help refused to help him,
so he was forced to get help himself. Although the

State *v.* Mark T.

trial court sustained the prosecutor's objection to the defendant's attempt to testify as to the specific details of the help that he sought, the court allowed the defendant to testify that the ''[t]he help that [the victim] needed . . . was not just some after-school program; it was much more significant.''

Thus, the trial court permitted the defendant to testify that he was having severe difficulties with the victim's behavioral problems, which required daily police intervention, that he was ''desperate'' to obtain help for the victim, that he was trying to take her to obtain that help at the time of the incident, and that the nature of that help was significant. The jury was also informed through Wilkos' testimony that the victim was enrolled in an intensive support program at the school designed for students with significant behavioral issues, and that it was common for those students to engage in disruptive behavior, to yell, and to become upset. Finally, the jury was informed of the victim's conduct when the defendant came to take her to the treatment program, specifically, that she vigorously defied and swore at the defendant, that she physically resisted his initial attempts to persuade her to go with him and that she screamed and struggled during the entire incident. I do not believe that the excluded testimony regarding the victim's attempts to run away and the specific details of the treatment that the defendant had arranged for the victim would have added materially to the probative value of this evidence.

In this regard, I emphasize that the parental justification defense applies only to the *justified* use of physical force that is objectively necessary[2] to promote the welfare of a minor; it does not provide an *excuse* for the

_____

[2] For purposes of this concurring and dissenting opinion, and consistent with the instructions provided to the jury, the term "objectively necessary means" refers to means that a reasonable person would believe are necessary to use under the circumstances.

State *v.* Mark T.

unnecessary use of physical force by a parent who reasonably is suffering from extreme frustration or some other form of emotional distress. Although the defendant's past difficulties with the victim might tend to explain his emotional state during the encounter and to excuse his behavior, at least morally, it is, in my view, highly dubious that a jury could reasonably conclude that any sense of urgency short of a subjective and reasonable belief in the need for immediate treatment to save life or limb would justify dragging the recalcitrant victim by her ankle through the corridors of the school as she struggled and screamed, thereby causing physical injury to the victim and a serious and frightening disturbance in the school, as an objectively necessary means to promote her welfare. The record reveals that professionals, like Wilkos, were attempting to assist the victim and to prevent the violent removal of her from the school. Nothing in the record remotely supports a conclusion that the victim was in imminent danger of serious harm such that it would have been detrimental to her welfare to postpone treatment until such time as the victim could be either persuaded to go to treatment or, if necessary, constrained to go in a skillful and orderly manner. Indeed, if the defendant had information regarding the victim's behavior or the treatment program that was significantly different in quality or significantly more probative with respect to his justification defense than the information that was actually provided to the jury, it is difficult to understand why he would not have disclosed that information to the prosecutor or to the trial court at any point during pretrial proceedings or trial.[3] Thus, on the basis of the record before it, the trial court reasonably could have

---

[3] The only information that may be gleaned from a review of the trial court's hearings on the two motions in limine filed by the state and the eight separate pretrial motions filed by the defendant is that the defendant planned to take the victim to an intake appointment at a known mental health treatment facility for children.

262          NOVEMBER, 2021          339 Conn. 225

State *v.* Mark T.

concluded that additional evidence of the victim's past behavior would have been very weakly probative, at best.

Accordingly, the trial court reasonably could have concluded that the victim's privacy interest in not having additional details of her behavioral problems and proposed treatment published in court, which was the basis for the state's pretrial motion in limine, outweighed the merely incremental value to the defendant of providing the jury with those details.[4] I would conclude, therefore, that the Appellate Court correctly determined that it was not an abuse of discretion for

[4] At the hearing on the state's motion in limine, the guardian ad litem argued that the victim had a privacy interest in not revealing the name of the treatment facility at which she had an appointment on the day of the incident because it would tend to reveal the nature of the disorder for which the defendant sought treatment on the victim's behalf. It is well established that persons have a privacy interest in their medical treatment records that may justify the exclusion of relevant medical evidence. See *State* v. *White*, 139 Conn. App. 430, 440, 55 A.3d 818 (2012) (it was within trial court's discretion "to exclude the [complainant's] medical records, as they would not have disclosed material sufficiently probative of the defendant's theory of defense to justify breaching their confidentiality"), cert. denied, 307 Conn. 953, 58 A.3d 975 (2013). It follows that the trial court also has the discretion to exclude testimony that would reveal the content of confidential medical records, such as the nature of the disorder for which the person is being treated and the identity of the medical treatment provider.

The majority states that, because the articulated basis for the prosecutor's objections to the defendant's question was relevancy, the state cannot now claim that the testimony was properly excluded on the ground that the exclusion of the testimony would protect the victim's privacy. I would note that the prosecutor did not articulate the basis for several of her objections to the defendant's questions, including the questions specifically directed at the nature of the treatment that the defendant had arranged for the victim. In light of the subject matter of the defendant's testimony, the trial court reasonably could have concluded that the objections were based on its ruling on the pretrial motion in limine. The majority also states that the defendant's testimony about the specific nature of the treatment program was "too general" to render further testimony cumulative. The defendant does not challenge on appeal, however, the trial court's pretrial ruling precluding him from identifying the treatment facility *for the very reason* that it would tend to reveal the nature of the victim's disorder.

State *v.* Mark T.

the trial court to exclude this evidence. Because I would conclude that the trial court properly excluded the testimony of Wilkos and the defendant, I would also conclude that the Appellate Court correctly concluded that the trial court did not violate the defendant's constitutional right to present a defense. See, e.g., *State* v. *Devalda*, supra, 306 Conn. 516 ("[i]f the proffered evidence is not relevant [or is otherwise inadmissible], the defendant's right to [present a defense] is not affected" by its exclusion (internal quotation marks omitted)).

The majority contends that, although the jury was informed that the victim was in a special program for students with serious behavioral problems, that the police were coming to the defendant's house every night to deal with the victim, that the defendant was acutely afraid that the victim would be placed in foster care if she continued to engage in such disturbing and disruptive behavior, that the defendant believed that getting treatment for the victim was urgent, that the treatment program he was trying to bring her to was significant, and that the victim was extremely upset, physically resistant and profanely defiant when informed that the defendant was going to take her to the treatment program, the excluded testimony was, nevertheless, "material to the subjective and objective reasonableness" of the defendant's conduct in dragging the victim through the school by her ankle as she struggled and screamed.[5]

---

[5] As the trial court properly instructed the jury, the subjective component of the parental justification defense requires that the defendant must *actually* believe that his conduct was *necessary* to promote the victim's welfare. The reasonableness requirement comes in through the objective component, under which the jury must be instructed that, if it finds that the defendant actually believed that his use of physical force was necessary, it still must find the defendant guilty if it determines that a reasonable person, viewing all the circumstances from the defendant's point of view, would not have shared that belief. Cf. *State* v. *Heinemann*, 282 Conn. 281, 301–302, 920 A.2d 278 (2007) (discussing difference between subjective component of duress defense, under which defendant in fact must believe that his life would be endangered, and objective component, under which defendant's belief must be reasonable). In apparent reliance on the Appellate Court's

State *v.* Mark T.

Specifically, the majority contends that "[t]he nature and severity of the defendant's difficulty parenting his daughter were material to the strength of his subjective belief that his use of force was reasonable to get [the victim] to her mental health appointment." In addition, the majority contends that "the nature and severity of [the victim's] behavioral problems were material to the degree to which a reasonable parent in the defendant's position would agree that his use of force was reasonable under the circumstances." Accordingly, the majority states that it "cannot conclude, with a fair assurance, that the [exclusion of the defendant's testimony] did not substantially affect the verdict."

The fundamental flaw in this analysis is that, even if the majority were correct that the trial court improperly excluded the defendant's testimony because it was relevant to the defendant's justification defense, the defendant made no offer of proof before the trial court regarding the details of the victim's difficult behaviors

statement that "the defense of parental justification requires both subjective and objective reasonableness on behalf of the parent or guardian with respect to the use of physical force"; *State* v. *Mark T.*, 186 Conn. App. 285, 296–97, 199 A.3d 35 (2018); the majority on several occasions uses language that, contrary to the statutory language and the trial court's instruction, seems to inject a reasonableness requirement into the subjective component of the defense. Specifically, the majority refers to the "objective and subjective elements of reasonableness"; "subjective and objective reasonableness"; the jury's ability to determine whether "the defendant's conduct could be subjectively or objectively reasonable"; "the reasonableness of [the defendant's] actions, both subjectively and objectively"; and "the subjective and objective reasonableness of the defendant's actions." Although the majority states that "nothing about [its] analysis injects a reasonableness requirement into the subjective component of the defense"; footnote 7 of the majority opinion; the language it employs clearly suggests that, to the contrary, the subjective component may be satisfied if the jury finds that the defendant believed that the use of physical force was *reasonable*, rather than that it was *necessary*. The reference to the "subjective and objective reasonableness" language not only needlessly muddies the true focus of the subjective component of the defense of justification, it also erroneously suggests that the defendant, and not the jury, should be left to judge the objective reasonableness of his own beliefs and actions.

State *v.* Mark T.

and the nature of the treatment program to which he
would have testified if allowed, and he also did not
provide those details on appeal to the Appellate Court
or to this court. Accordingly, the majority has no basis
for concluding that the exclusion of the testimony was
harmful.[6] See, e.g., *Dinan* v. *Marchand*, 279 Conn. 558,
583, 903 A.2d 201 (2006) ("[b]ecause at trial the plaintiff
made no offer of proof regarding the specific substance
of the excluded testimony . . . it is not possible to
evaluate the harmfulness of the exclusion, if improper,
in light of the record"); *Burns* v. *Hanson*, 249 Conn.
809, 824, 734 A.2d 964 (1999) ("[t]he absence of an offer
of proof may create a gap in the record that would
invite inappropriate speculation on appeal about the
possible substance of the excluded testimony"). Although
the defendant's failure to make an offer of proof is
arguably excusable in light of the fact that he was self-
represented, he is represented by counsel on appeal,
and he still has not specified the additional facts to
which he would have testified if the trial court had
permitted such testimony or explained how those facts
could have affected the verdict. Cf. *In re Lukas K.*, 300
Conn. 463, 465, 473–74, 14 A.3d 990 (2011) (trial court
properly denied request for continuance in termination
of parental rights proceeding when respondent father
had "not identified on appeal any additional evidence
or arguments that he could have presented if the trial
court had granted his request"); *State* v. *Lopez*, 280
Conn. 779, 790, 911 A.2d 1099 (2007) (when defendant
did not identify on appeal any arguments that defense
counsel would have made at sentencing hearing if trial
court had granted defendant's request for continuance

---

[6] The majority faults the state for conflating relevance with cumulativeness
with respect to its argument that the trial court properly excluded the
defendant's testimony. Even if there were some merit to that contention,
the majority overlooks the defendant's failure to establish that any additional
evidence would not have been merely cumulative when considering whether
the trial court's ruling was harmful.

State *v.* Mark T.

so that new counsel could review trial transcript, any
impropriety in denying request for continuance was
deemed harmless). In light of these well established
principles of appellate review, there is no basis to con-
clude, on this record, that the defendant is entitled to
a new trial.

Like the majority, I, too, recognize that this was a
trial involving a self-represented defendant who, at the
time of the incident, had recently obtained custody of
his troubled young daughter. I believe, however, that
the majority has given that consideration far too much
weight. The defendant was warned repeatedly about
the dangers of self-representation,[7] and my review of
the record satisfies me that the trial court patiently
explained and assisted the defendant with the trial pro-
cess and gave him wide latitude on many occasions,
consistent with the court's duty to be solicitous of the
rights of self-represented parties.[8] See, e.g., *Marlow* v.

[7] As the Appellate Court observed, "[o]n more than one occasion, the
[trial] court canvassed the defendant in accord[ance] with Practice Book
§ 44-3 (4), ensuring that he was aware of the dangers and disadvantages of
self-representation." *State* v. *Mark T.*, 186 Conn. App. 285, 288 n.1, 199 A.3d
35 (2018). The record also reveals that the trial judge appointed standby
counsel for the defendant on July 28, 2016, approximately six weeks prior to
the start of trial. In addition to attending pretrial hearings and jury selection,
standby counsel was present during the entire duration of the trial and was
available to the defendant, should he have opted to seek his assistance
or advice.

[8] For example, in response to numerous valid objections by the prosecutor
that the defendant was making arguments instead of asking witnesses ques-
tions, the court suggested that the defendant rephrase his statements by
asking specific questions and explained that he would have a chance to
make arguments and to tell the jury the significance of the particular exhibits
to which he was referring during his closing argument. The court took no
action when the defendant told the jury during a witnesses' testimony that
he was "fighting for [his] life." When the defendant asked the victim during
cross-examination how she had managed to flip over while he was holding
her right leg and left arm, she stated, "I don't know, I just did." The trial
court took no action when the defendant responded to this testimony with
sarcastic disbelief, stating, "[y]ou just did. That is . . . amazing . . . that's
amazing." Nor did the court take any action when, also during his questioning
of the victim, the defendant stated sarcastically, "[s]o, now we're in the
middle of such a horrendous event . . . ." Later, the court gave the defen-

State *v.* Mark T.

*Starkweather*, 113 Conn. App. 469, 473, 966 A.2d 770 (2009) (The courts should be "solicitous of the rights of [self-represented] litigants and . . . endeavor to see that such a litigant shall have the opportunity to have his case fully and fairly heard so far as such latitude is consistent with the just rights of any adverse party. . . . Although [the trial courts may] not entirely disregard our rules of practice, [they should] give great latitude to [self-represented] litigants in order that justice may both be done and be seen to be done." (Internal quotation marks omitted.)). Placing too much emphasis on a defendant's self-representation sends the message that a defendant can ignore repeated warnings about the real and serious dangers of self-representation, roll the dice on representing himself in a jury trial and, if he is convicted, get a second bite at the apple.[9]

dant an opportunity to reconsider his decision to testify and carefully warned him of the dangers of doing so. The court also gave the defendant a detailed explanation of the jury instructions when it became apparent that he had misunderstood them. In addition, the court took no action when the defendant argued to the jury that he was trying to take the victim to the hospital for services during the incident, despite the fact that the court previously had prevented the defendant from testifying to that effect.

[9] Having said this, I acknowledge that additional steps could have been taken to allow the self-represented defendant to present a more detailed picture of the context of the incident to the jury. For example, although the issue was squarely raised before trial, the court and the parties apparently reached no pretrial understanding as to the precise level of detail regarding the treatment facility and the nature of the appointment to which the defendant was attempting to take the victim that he would be allowed to present. Nor was there an understanding as to the level of detail regarding the victim's difficult behaviors that would be permitted. It would have been helpful if the court had explained, outside of the presence of the jury, the parameters of the evidence that would be permitted relating to this issue. In addition, although the prosecutor did not engage in any improper conduct, she repeatedly objected during the defendant's examination of witnesses, sometimes without stating on the record the basis for objecting to the admission of the evidence. Accordingly, it would have been helpful for the trial court to explain the reasons for its evidentiary rulings on the record. Nevertheless, although the trial may not have been a perfect one, it was a fair one. Cf. *State* v. *Anderson*, 255 Conn. 425, 435, 773 A.2d 287 (2001) ("[d]ue process seeks to assure a defendant a fair trial, not a perfect one" (internal quotation marks omitted)).

Finally, there is no question that a reasonable person, including a member of a jury, would be sympathetic to the challenges presented in raising a child with significant behavioral issues. However, our job is to determine whether the trial court properly excluded the defendant's testimony. I would conclude that it did and that, even if it did not, the defendant cannot establish that any impropriety was harmful.

Because I disagree with the majority's conclusion that a new trial is warranted, I respectfully dissent in part.

———————————————